GLENDA K. LARSON, Appellant, *v.* THE
STATE OF NEVADA, Respondent.

No. 18755

December 21, 1988                              766 P.2d 261

*William H. Smith,* Las Vegas, for Appellant.[1]

[1]Appellant's counsel did not represent her during the proceedings below.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, and *James Tufteland,* and *John E. Ham,* Deputies, Clark County, for Respondent.

## OPINION

*Per Curiam:*[2]

Appellant Glenda Kay Larson was convicted of first-degree murder with use of a deadly weapon and sentenced to two consecutive life sentences with the possibility of parole. The sole question on this appeal is whether Glenda received effective assistance of counsel during the pretrial plea negotiation phase of these proceedings. We conclude that she did not.[3]

On August 22, 1986, Glenda shot and killed her husband Jonathan Larson. During the four years of their marriage preceding Jonathan's death, the victim had been an alcoholic and had continuously subjected his wife to physical and mental abuse.

After her arrest, appellant underwent psychiatric testing which revealed that at the time of the killing she was suffering from "post-traumatic stress disorder" and "battered wife syndrome." Dr. Thomas Carroll, the psychologist who performed the evaluations, concluded that these disorders impaired Glenda's ability to reason and rendered her unable to control her actions when she shot her husband.

Glenda's appointed counsel planned to use Dr. Carroll's conclusions to establish at trial that Glenda's act, in her own mind, was an act of self-defense even though her husband was sleeping when she shot him. The record in this case reveals that the defense attorney also believed his successful presentation of this

---

[2]THE HONORABLE E. M. GUNDERSON, Chief Justice, did not participate in the decision of this appeal.

[3]Appellant properly preserved this issue for appeal by raising it in a motion for a new trial. The district court conducted an evidentiary hearing on that issue, but denied the motion.

"self-defense" theory at Glenda's trial would bring him increased clientele and national acclaim.[4]

Without commenting on the availability of a "battered wife defense" in Nevada,[5] we conclude that counsel's desire for business and notoriety skewed his perception of Glenda's chances at trial and greatly diminished his ability to effectively provide his client with essential pre-trial counsel and advice.[6]

The State, on two occasions, offered Glenda an opportunity to plead guilty to second-degree murder. Her counsel encouraged her to reject the offer on the premise that "the state would not have offered [her] such a plea bargain if it did not feel that its case was weak." Glenda followed that advice.

The State then offered Glenda the option of pleading guilty to voluntary manslaughter with the use of a deadly weapon. When she learned that this was a probational offense, Glenda accepted the State's offer, despite her attorney's strong objections, and entered a guilty plea on February 9, 1987.

By the time of Glenda's plea, her attorney had acquired an unprecedented belief that he had some sort of proprietary or attorney "work product" interest in Glenda's psychological test results. As a result, he instructed Dr. Carroll to relabel all of Glenda's files as "attorney work product" and to keep them from the State. He then failed or refused to send the information to the Department of Parole and Probation for its consideration as mitigating circumstances in the presentence report.[7] Before the sentencing hearing, the attorney did provide the judge with the

---

[4]The attorney told Dr. Carroll, "If we won this case, we'd be flying across the country consulting as a consulting team in special cases like this and I'd have all the work I could handle. I'd have to hire people to help me I'd be so busy."

[5]The Kansas Supreme Court recently determined that a self-defense instruction is improper in a case in which a battered woman kills her sleeping spouse. State v. Stewart, 763 P.2d 572 (Kan. 1988). However, at least two other jurisdictions have held that an abused spouse who kills her sleeping husband is entitled to a jury instruction on the battered spouse self-defense theory. See State v. Norman, 366 S.E.2d 586 (N.C.Ct.App.), appeal pending, 370 S.E.2d 233 (N.C. 1988); State v. Leidholm, 334 N.W.2d 811 (N.D. 1983).

[6]We note, as a preliminary matter, that in addition to his or her rights at trial, a criminal defendant has a Sixth Amendment right to the effective assistance of counsel when deciding whether to accept or reject a plea bargain. See McMann v. Richardson, 397 U.S. 759 (1970) (Constitution guarantees effective counsel when accepting guilty plea); Turner v. Tennessee, 858 F.2d 1201, 1205 (6th Cir. 1988) (Constitution guarantees effective counsel when rejecting a plea offer).

[7]Without the mitigating circumstances evidence, the Department of Parole and Probation recommended a seven-year sentence for the voluntary manslaughter charge with a consecutive seven-year sentence for the use of a deadly weapon charge.

test results, but refused to provide a copy to the State. The attorney advised Glenda that if the court required him to turn over the information, she was to withdraw her guilty plea and proceed to trial. When Glenda questioned his reasons, he told her to "shut up and . . . trust him because he knew what he was doing because he was a lawyer and [Glenda] wasn't."

When the court did order Glenda's attorney to provide the State with the psychiatric information, he asked that his client be allowed to withdraw her plea and go to trial. The court gave Glenda that option; she acted according to her attorney's wishes.

Following the withdrawal of the plea, the State again offered Glenda the option of pleading guilty to voluntary manslaughter with the use of a deadly weapon. But her attorney assured her that her chances of an acquittal were very good and that at most a jury would convict her only of the same crime the State offered in its plea bargain.

Glenda finally rejected the offer and proceeded to trial. As we noted earlier, the trial resulted in a first-degree murder conviction and two consecutive life sentences with the possibility of parole.[8]

This is not a situation in which an attorney made a reasoned plea recommendation which hindsight reveals to be unwise. Neither is this a case of an attorney relying on an ultimately unsuccessful defense tactic. Seldom could such scenarios support a finding of ineffective assistance of counsel. *See* Strickland v. Washington, 466 U.S. at 689; McMann v. Richardson, 397 U.S. 759, 770 (1970).

This is a case in which it is apparent that defense counsel based his recommendation and tactical decisions upon factors that would further his personal ambitions as opposed to his client's best interest. It is this conduct which "fell below an objective standard of reasonableness" and resulted in "prejudice" to his client. Strickland v. Washington, 466 U.S. at 687 (1984). *See also* Warden v. Lyons, 100 Nev. 430, 683 P.2d 504 (1984). It was this conduct which denied Glenda her constitutionally guaranteed right to effective assistance of counsel.

Because Glenda was not effectively represented, we reverse her conviction for first-degree murder with use of a deadly weapon and remand for a new trial.[9]

---

[8]Appellant also asserts that her attorney's efforts in presenting her defense at trial fell below the level of "reasonable attorney competence." Because this issue was not raised in any post-trial proceeding and because we decide the case on the pretrial assistance issue, it is unnecessary for us to discuss the merits of this claim, although we are constrained to note that the record reveals strong evidence of incompetence by defense counsel during trial.

[9]Based upon candid representations by counsel for the State during oral argument, we anticipate that Glenda will be afforded another opportunity to accept a plea of voluntary manslaughter with use of a deadly weapon.