2007 UT 50

**STATE of Utah, Plaintiff
and Respondent,**

v.

**Darren Neil GREUBER, Jr., Defendant
and Petitioner.**

No. 20060009.

Supreme Court of Utah.

July 3, 2007.

Mark L. Shurtleff, Att'y Gen., Matthew D. Bates, Asst. Att'y Gen., Vincent Meister, Salt Lake City, for plaintiff.

Jennifer K. Gowans, Provo, for defendant.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 This case comes before us on a writ of certiorari. Darren Neil Greuber, Jr., challenges the court of appeals' decision that his attorneys were not constitutionally ineffective. We affirm and conclude that Greuber was not prejudiced by his counsel's failure to investigate evidence that might have militated in favor of accepting a plea bargain. Greuber suffered no prejudice because he received a fair trial, and furthermore, the trial court properly found that he would not have accepted a plea to murder even if the evidence had been fully investigated.

## BACKGROUND

¶ 2 On the night of October 9, 2001, Greuber, three individuals, and a member of a white supremacist gang were smoking methamphetamine. When the drugs could not be found, the gang member called several other members of his gang to the house. When they discovered that Don Dorton, who was not a gang member, had hidden the drugs, Greuber and members of the gang kicked and punched him in the face and body. Dorton was wrapped in a sheet with his head covered, and his wrists and ankles were bound with duct tape. Greuber carried Dorton to a car and, with the assistance of two other men, transported him to a dirt road. Greuber then dragged Dorton out of and away from the car. He returned to the car without Dorton. The next night, one of the men returned to the scene and found Dorton dead, with an eighty-three-pound rock on his head. Greuber was arrested and charged with criminal homicide and aggravated kidnaping.

¶ 3 During the initial stages of trial preparation, the State offered to allow Greuber to plead guilty to murder in exchange for dis-

missal of the aggravated kidnaping charge. Greuber rejected the offer.

¶ 4 Part of Greuber's trial strategy was to impeach a jailhouse informant testifying against him by attempting to show that the informant fabricated Greuber's confession after reading discovery materials that Greuber had in his possession while he shared a cell with the informant. After the plea offer had been rejected, but prior to trial, the State served the defense with a Response to Discovery Request referencing recordings of Greuber's prison phone conversations. Greuber's attorneys did not listen to the recordings prior to trial. Thus, they were unaware that the recordings contained statements made by Greuber after the informant had been transferred out of his cell. In one such conversation, Greuber stated that he had not yet received his discovery.[1] At trial, the defense attorneys told the court, in the presence of the jury, that they intended to call Greuber and another witness. During a recess, at the State's suggestion, the defense attorneys listened to the recordings and determined that, because of ethical and credibility considerations, it was not possible to put Greuber or the other witness on the stand. After the recess, the defense attorneys moved for a mistrial. The court denied the motion, and the defense rested without calling the promised witnesses. The jury convicted Greuber of murder and aggravated kidnaping.

¶ 5 On appeal, Greuber claimed that his trial attorneys were constitutionally ineffective because his rejection of the plea offer was due to their failure to listen to the recordings before trial, and thus to realize that the defense impeachment strategy was contrary to the evidence. During an evidentiary hearing on the ineffective assistance of counsel claim, Greuber testified that he would have accepted the plea bargain offer had his attorneys listened to the recordings.[2] The defense attorneys, however, testified that Greuber would not have accepted the plea offer because he did not want to plead guilty to murder. The district court conclud-

ed that Greuber would not have accepted the plea offer because he was unwilling to accept any plea that included the charge of murder. Accordingly, the court found that Greuber suffered no prejudice as a result of his attorneys' actions. The court of appeals affirmed, noting that there is no constitutional right to a plea bargain. *State v. Grueber*, 2005 UT App 480U, 2005 WL 3007970. We granted certiorari to determine (1) whether counsel's failure to investigate evidence that would militate in favor of accepting a plea bargain may meet the requirement of demonstrating prejudice for an allegation of ineffective assistance of counsel, and (2) whether the record adequately supports the district court's finding that Greuber would not have accepted the State's plea offer even if counsel had fully investigated the State's evidence. Our jurisdiction is appropriate pursuant to Utah Code section 78–2–2(3)(a), (5) (2002).

## STANDARD OF REVIEW

¶ 6 "On certiorari review, this court reviews the decision of the court of appeals, not the decision of the district court." *Colosimo v. Roman Catholic Bishop*, 2007 UT 25, ¶ 11, 156 P.3d 806. Whether the Sixth Amendment applies is a question of law that we review for correctness. In assessing a claim of ineffective assistance of counsel, "we review for correctness the trial court's application of the law to the facts, but we will overturn the [trial] court's findings of fact only if they are clearly erroneous." *Menzies v. Galetka*, 2006 UT 81, ¶ 58, 150 P.3d 480. "For a reviewing court to find clear error, it must decide that the factual findings made by the trial court are not adequately supported by the record, resolving all disputes in the evidence in a light most favorable to the trial court's determination." *State v. Pena*, 869 P.2d 932, 935–36 (Utah 1994).

## ANALYSIS

¶ 7 Two issues were presented in this case: first, whether the failure of Greuber's

---

1. We note that this information was not available to Greuber's attorneys at the time Greuber rejected the plea offer.

2. The record does not explain why Greuber himself would not have known that the witness had no access to his discovery materials in jail.

attorneys to investigate the contents of the recordings and Greuber's rejection of the plea bargain offer meet the requirement of demonstrating prejudice for an allegation of ineffective assistance of counsel; and second, whether the record adequately supports the district court's finding that Greuber would not have accepted the plea. We conclude that while the Sixth Amendment right to the effective assistance of counsel generally applies during the plea process, Greuber's rejection of the plea offer in this case did not result in prejudice because he received a fair trial; and in any event, the district court's conclusion that Greuber would not have accepted any plea involving murder was not clearly erroneous.

## I. PLEA BARGAINS AND THE SIXTH AMENDMENT

¶ 8 The Sixth Amendment of the United States Constitution guarantees a criminal defendant's right to counsel "in order to protect the fundamental right to a fair trial." *Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The United States Supreme Court has recognized that "the right to counsel is the right to the effective assistance of counsel," *id.* at 686, 104 S.Ct. 2052 (internal quotation marks omitted), and effective assistance is required during the "plea process," *Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

¶ 9 In order to show ineffectiveness during plea negotiations, a defendant must show that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *Hill,* 474 U.S. at 57, 106 S.Ct. 366. If counsel's representation fell below an objective standard of reasonableness, her performance was deficient. *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. Further, the defendant is prejudiced by counsel's actions only if the result of the proceedings would have been different absent the claimed deficiency.[3] *Id.* at 691, 104 S.Ct. 2052. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697, 104 S.Ct. 2052.

¶ 10 When the Supreme Court has applied the Sixth Amendment right to the plea process, it has considered whether an *accepted* guilty plea has prejudiced the defendant, *Hill,* 474 U.S. at 58, 106 S.Ct. 366, and not how the right applies when a defendant *rejects* a plea and proceeds with a fair trial. We too have considered the right in the context of guilty pleas. *See State v. Rojas-Martinez,* 2005 UT 86, ¶ 10, 125 P.3d 930; *see also State v. Martinez,* 2001 UT 12, 26 P.3d 203. But unlike the Supreme Court, we have had the opportunity to consider the Sixth Amendment right when a plea offer is rejected and the defendant proceeds with a fair trial. *State v. Knight,* 734 P.2d 913, 919 n. 7 (Utah 1987) (recognizing that the key difference between an accepted plea offer and a rejected plea offer is that in the latter case, the defendant does "not waive his right to a fair trial"); *State v. Geary,* 707 P.2d 645, 646 (Utah 1985) ("[O]ur state and federal constitutions guarantee fair trials, not plea bargains."). Although we rejected the defendant's claim in *Knight,* we did so with little analysis, and therefore, we take this opportunity to elaborate on the Sixth Amendment's application to rejected plea bargains.

¶ 11 It is clear that defendants possess the right to the effective assistance of counsel in plea negotiations. The Supreme Court has recently reiterated, however, that the right to the effective assistance of counsel is grounded in the constitutional right to receive a fair trial. *United States v. Gonzalez–Lopez,* —— U.S. ——, ——, 126 S.Ct. 2557, 2563, 165 L.Ed.2d 409 (2006) (recognizing that the right to effective assistance of counsel is derived from the right to a fair trial unlike the right to counsel of choice). The right is "recognized not for its

---

3. We note that prejudice is presumed when a defendant is denied altogether the assistance of counsel at a critical stage of the proceedings, including plea bargaining. *See Strickland,* 466 U.S. at 692, 104 S.Ct. 2052; *United States v.*

*Cronic,* 466 U.S. 648, 659 n. 25, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Actual or constructive denial of the assistance of counsel during the plea process is not claimed in this case.

own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of the challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." *United States v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Thus, while Greuber did possess the right to effective assistance of counsel during the plea process, he could not ultimately have been prejudiced in this case because he received a trial that was fair—the fundamental right that the Sixth Amendment is designed to protect. Nothing in counsels' pretrial conduct suggests "that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052.

¶ 12 Some courts applying the Sixth Amendment right in the context of a rejected plea offer have concluded that "if the offer is rejected because of the ineffective assistance of counsel, the fact that the defendant subsequently receives a fair trial does not ameliorate the constitutional harm that occurred in the plea process." *Commonwealth v. Mahar*,

442 Mass. 11, 809 N.E.2d 989, 993 (2004).[4] Other courts have concluded, as we do, that a fair trial for the defendant generally negates the possibility of prejudice.[5] If an attorney's deficiency during the plea process somehow renders the trial unfair, then prejudice could result from a rejected plea offer. But in this case, the result was a fair trial; Greuber has not argued that his attorneys' failure to listen to the recordings rendered the trial's result unreliable or fundamentally unfair in any way.

¶ 13 In reaching our conclusion, we do not ignore the importance of the plea bargain as "an essential component of the administration of justice." *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). We recognize the widespread use of plea bargains and the importance of a defendant's decision to plead or go to trial. *See Turner v. Tennessee*, 664 F.Supp. 1113, 1119 (M.D.Tenn.1987). However, if a defendant rejects a plea offer based on his attorney's poor advice and is later convicted after a fair trial, he has not been deprived of a "substantive or procedural

---

**4.** Numerous courts either have not addressed the issue of the defendant's receipt of a fair trial or have concluded, as the *Mahar* court did, that a fair trial does not ameliorate the ineffectiveness issue. The fact scenarios in these cases have varied widely and differ significantly from the case before us. Some examples include (1) ineffectiveness claims where counsel failed entirely to advise the defendant in her decision to reject a plea, *see, e.g., Boria v. Keane*, 99 F.3d 492, 495 (2d Cir.1996); (2) ineffective assistance claims where counsel failed to communicate a plea offer to the defendant, *see, e.g., Pham v. United States*, 317 F.3d 178, 182 (2d Cir.2003); *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir.1994); *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir.1991); *Johnson v. Duckworth*, 793 F.2d 898, 902 (7th Cir.1986); *United States ex rel. Caruso v. Zelinsky*, 689 F.2d 435, 436 (3d Cir.1982); *Cottle v. State*, 733 So.2d 963, 965–66 (Fla.1999); *Lloyd v. State*, 258 Ga. 645, 373 S.E.2d 1, 3 (1988); *Commonwealth v. Copeland*, 381 Pa.Super. 382, 554 A.2d 54, 55 (1988); *Ex parte Wilson*, 724 S.W.2d 72, 74 (Tex.Crim.App.1987); *State v. James*, 48 Wash.App. 353, 739 P.2d 1161, 1165 (1987); and (3) ineffectiveness claims where counsel misadvised the defendant as to sentencing exposure due to incorrect calculations under the sentencing guidelines, misreading of the maximum sentence for a charge, or unawareness that the charges in question carried a minimum mandatory sentence, *see, e.g., United States v. Rashad*, 331 F.3d 908, 909 (D.C.Cir.2003) (erroneous advice about minimum total sentence ex-

posure); *Coulter v. Herring*, 60 F.3d 1499, 1502 (11th Cir.1995) (erroneous advice about sentencing options); *United States v. Day*, 969 F.2d 39, 40 (3d Cir.1992) (incorrect advice about maximum sentencing exposure); *Lewandowski v. Makel*, 949 F.2d 884, 886 (6th Cir.1991) (erroneous advice about impact of rejecting already-accepted plea); *People v. Curry*, 178 Ill.2d 509, 227 Ill.Dec. 395, 687 N.E.2d 877, 881 (1997) (maximum sentence miscalculated); *State v. Taccetta*, 351 N.J.Super. 196, 797 A.2d 884, 886 (N.J.Super.Ct.App.Div.2002) (erroneous advice about minimum total sentencing exposure). We note that in these types of cases, the egregious conduct of counsel in misleading a defendant about the legal consequences of a decision to decline a plea offer or in failing to inform a defendant about the existence of such an offer might effectively constitute the *absence* of counsel at a critical stage. We do not offer an opinion on that question, however, as it is not before us in this case.

**5.** *Bryan v. Missouri*, 134 S.W.3d 795, 802 (Mo.Ct.App.2004) (concluding there was no Sixth Amendment violation when defendant was not deprived of a fair trial); *cf. Louisiana v. Monroe*, 757 So.2d 895, 898 (La.Ct.App.2000) ("[B]y failing to accept the plea bargain [defendant] preserved all of his constitutional rights including his only chance of being found not guilty.")

right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). There is no right to a plea offer or to a successful plea bargain. Instead, the defendant has lost merely an opportunity, one which may present itself to some defendants but not to others. Such opportunities can be contingent, time limited, or withdrawn as the prosecution reevaluates its case. An attorney's failure to properly investigate or assess evidence that might militate in favor of accepting a plea does not equate to the constitutional deprivation of a fair trial, especially when, as in this case, the defendant himself was aware of the facts that the attorney failed to uncover, and furthermore, at the time of the plea rejection, the evidence was not even available to the defendant's counsel. If a defendant has been convicted at a fair trial after rejecting, with the assistance of counsel, the plea opportunity, there is nothing " 'unreliable' " or " 'fundamentally unfair' " about imposing a sentence based on the conviction. *Mahar*, 809 N.E.2d at 997–98 (Sosman, J., concurring) (quoting *Fretwell*, 506 U.S. at 372, 113 S.Ct. 838).

¶ 14 If we were to hold that a defendant suffered prejudice even when he was afforded a fair trial, we would face the problematic task of fashioning an appropriate remedy for the claimed harm. Where ineffective assistance causes a defendant to plead guilty and waive his right to trial, the remedy is clear: permit the defendant to rescind his plea and allow him to go to trial. However, where the allegedly deficient performance of counsel causes a defendant to reject an opportunity to plead and to receive his constitutionally guaranteed fair trial, it is impossible to resuscitate the original opportunity.[6] Courts "cannot recreate the balance of risks and incentives on both sides that existed prior to trial, and the attempts to do so raise their own serious constitutional problems." *Mahar*, 809 N.E.2d at 1001 (Sosman, J., concurring).

¶ 15 For example, some courts have required the prosecution to give the defendant the same offer he had before trial, even though the defendant has since been convicted at a fair trial. *See, e.g., United States v. Blaylock*, 20 F.3d 1458, 1468–69 (9th Cir. 1994). Under the doctrine of separation of powers, we do not believe courts have the power, in the absence of prosecutorial misconduct, to require the prosecution to dismiss charges, as would often be necessary to enact the earlier rejected plea. *Mahar*, 809 N.E.2d at 1001 (Sosman, J., concurring). Further, requiring the state to reoffer after trial a plea bargain it may have made originally to avoid the expense and risk of a trial violates separation of powers and basic fairness principles. *Id.* at 1002.

¶ 16 In recognition of these difficulties, other courts have instead granted the defendant a new trial. *See, e.g., People v. Curry*, 178 Ill.2d 509, 227 Ill.Dec. 395, 687 N.E.2d 877, 890 (1997); *Larson v. State*, 104 Nev. 691, 766 P.2d 261, 263 (1988); *State v. Taccetta*, 351 N.J.Super. 196, 797 A.2d 884, 888 (Ct.App.Div.2002). However, a new trial does not remedy the lost opportunity to plead. A new trial cannot restore the defendant's "opportunity to plead guilty to lesser charges with lesser sentences." *Mahar*, 809 N.E.2d at 1002 (Sosman, J., concurring) (citing *State v. Kraus*, 397 N.W.2d 671, 674 (Iowa 1986) ("[I]t is difficult to see how a new trial restores the lost chance of the bargain.")). In addition, ordering a new trial may sometimes constitute a thinly veiled attempt to force the prosecution to reinstate the initial offer. *See In re Alvernaz*, 2 Cal.4th 924, 8 Cal.Rptr.2d 713, 830 P.2d 747, 760 (1992) (allowing the prosecutor to resubmit the original plea or to elect within thirty days to retry the defendant and resume plea negotiations); *see also Larson*, 766 P.2d at 263 & n. 9; *Taccetta*, 797 A.2d at 888. Further, there is no guarantee that the delicate balance of witness availability and evidence will be the same after the first trial as it was at the time of the initial plea offer. If the witnesses are still available and the evidence in the prosecution's case has perhaps become stronger, a second, unnecessary trial will inevitably ensue. *Mahar*, 809 N.E.2d at 1002

---

**6.** This analysis applies, of course, only when the defendant receives a *fair* trial. If counsel's failure to investigate renders the result of the trial unfair or unreliable, the remedy of a new trial is appropriate.

(Sosman, J., concurring). On the other hand, if witnesses and evidence are not available, it is possible that a new trial will result in an acquittal, "a 'remedy' out of all proportion to the damage allegedly done by the ineffective assistance in connection with the earlier plea offer." *Id.* Finally, even if a plea offer is reinstated, there is no guarantee that the defendant will accept it, and presumably courts could not so require. *Id.* at 1002–03.

¶ 17 The unavailability of a rational remedy for ineffective assistance of counsel in the rejection of plea offers illustrates the flaws inherent in treating identically defendants who have received fair trials and those who have forgone trials and pled guilty.[7] Judges have long held themselves apart from the complex negotiations that characterize the plea bargaining process and have instead focused on their duty to ensure that defendants receive the fair trial to which they are constitutionally entitled.

¶ 18 Thus, we conclude that Greuber suffered no prejudice from his attorneys' failure to listen to the recordings because he received a fair trial. Additionally, we conclude that he suffered no prejudice based upon the factual findings of the district court. Conflicting evidence was presented to the court. Greuber maintained his innocence and testified that he would have taken the plea offer. His defense attorneys, however, testified that they did not believe Greuber would have accepted the plea, because he had expressed to them that he did not want to plead guilty to murder, and because dropping the aggravated kidnaping charge would have had only a nominal impact on his sentence. The district court was well within its discretion in giving more weight to the testimony of the attorneys than to Greuber's, and its factual determination was not clearly erroneous. Therefore, we affirm the trial court's conclusion that Greuber suffered no prejudice from his attorneys' failure to investigate because he would not have accepted the guilty plea in any event. Finding no prejudice in Greu-

ber's rejection of the plea offer, we need not examine whether the performance of the attorneys in this case was actually deficient.

## CONCLUSION

¶ 19 We conclude that Greuber did not suffer prejudice due to his counsels' failure to investigate evidence that may have militated in favor of accepting a plea. Greuber had a fair trial, and he would not in any event have accepted a plea to the charge of murder. Affirmed.

¶ 20 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.

---

7. Although we reject the symmetrical approach of treating defendants who accept pleas and those who reject pleas identically, we recognize that it has been advocated by some courts. *See, e.g., In re Alvernaz,* 8 Cal.Rptr.2d 713, 830 P.2d at 753–54 ("Both alternate decisions—to plead guilty or instead to proceed to trial-are products of the same attorney—client interaction and involve the same professional obligations of counsel."); *Turner v. Tennessee,* 664 F.Supp. 1113 (M.D.Tenn.1987).