2011 UT App 186

**STATE of Utah, Plaintiff and Appellant,**

v.

**Joel F. PACHECO–ORTEGA, Defendant and Appellee.**

No. 20090488–CA.

Court of Appeals of Utah.

June 9, 2011.

Mark L. Shurtleff and Laura B. Dupaix, Salt Lake City, for Appellant.

Joan C. Watt and Michael A. Peterson, Salt Lake City, for Appellee.

Before Judges McHUGH, ROTH, and CHRISTIANSEN.

## OPINION

McHUGH, Associate Presiding Judge:

¶ 1 The State appeals from the magistrate's pretrial order dismissing with prejudice the refiled information charging defen-

dant Joel F. Pacheco–Ortega with attempted murder with injury and aggravated kidnapping.[1] We reverse.

## BACKGROUND

¶ 2 On October 7, 2008, the State filed an information charging Pacheco–Ortega and his co-defendant, Luis Ceron (collectively, co-defendants),[2] with one count of attempted murder with injury, see Utah Code Ann. § 76–5–203(2) (2008), and one count of aggravated kidnapping, see id. § 76–5–302. A preliminary hearing was set for January 15, 2009.

¶ 3 At the time set for the preliminary hearing, the victim, who was also the prosecution's key witness, was transported to the hearing from jail, where he had been held due to criminal charges pending against him. Out of concern that the victim needed separate counsel to advise him of his rights against self-incrimination, the State asked for a continuance of the preliminary hearing. Counsel for Pacheco–Ortega agreed to the continuance, stating that he thought it was "appropriate because [the victim will] take the stand. He will be questioned and probably end up taking the Fifth at this point." The magistrate granted the continuance and rescheduled the preliminary hearing for February 26, 2009.

¶ 4 On that date, the parties agreed to another continuance. The victim was again present, this time pursuant to subpoena, and had been assigned counsel. However, the victim's counsel had not been appointed until the day before the preliminary hearing and was not adequately prepared to proceed. Therefore, the magistrate agreed to continue the preliminary hearing until April 2, 2009, but warned counsel for both sides that "even if there are problems that arise, the hearing needs to go forward on April 2 or there will be considerable rethinking of what's happening."

¶ 5 Although the victim had been present on the first two dates set for preliminary hearing, he did not appear on April 2. The

---

**1.** See Utah Code Ann. § 77–18a–1(3) (2008) (outlining circumstances in which the State may appeal).

**2.** Co-defendant Ceron's case may be found at State v. Ceron, 2011 UT App 187, 257 P.3d 508.

prosecutor asked for a third continuance, explaining that he had not served the victim with a material witness warrant or subpoena because he thought the victim was still in jail and would be present pursuant to a transport order. Although the prosecutor had attempted to serve the victim with a subpoena at his scheduled meeting with Adult Probation and Parole on the morning of the preliminary hearing, the victim failed to appear for that meeting. As a result, the State was unable to secure his presence at the preliminary hearing. After the State requested another continuance of the preliminary hearing, counsel for each of the codefendants objected. The magistrate dismissed the charges without prejudice, stating, "If the case is refiled and the State is able to meet all of the requirements that they need to appropriately refile this case, they may do it as they determine is appropriate and I'm not going to put any restrictions." The State then requested that the magistrate stay the order dismissing the charges until five o'clock. The prosecutor indicated that, in anticipation that the magistrate might dismiss the charges, he had arranged with his staff to have the cases against the codefendants immediately refiled. The magistrate denied the State's request, explaining:

> I simply am not going to make any orders that would say that if that's refiled again by 5:00 because then that's putting pressure on the refiling without taking into consideration that you still don't have that witness [the victim]. If that changes and you do and the State feels like it can go ahead and refile this case in full good faith, that you can go forward and in good faith think you will have the presence of the essential witness and that all occurs by 5:00, then that's pretty good.... I'm not restricting that refiling but it does need to be fully and completely meeting all of the requirements the State needs to do to refile.

The State refiled the cases against the codefendants later that same day after doing no more than learning that the victim's mother believed the victim was still in Utah and had agreed to let the victim know that the prosecutor was trying to reach him.

¶ 6 When the State refiled the case, it did not make any effort to have the case reassigned to the same magistrate, but it did notify counsel for both Pacheco–Ortega and Ceron that it was refiling. Pacheco–Ortega moved to quash the refiled information on the basis that the State's refiling violated the standards set out in *State v. Brickey*, 714 P.2d 644 (Utah 1986), and also asked that the case be assigned to the magistrate who had originally dismissed the cases. The original magistrate then held a hearing on Pacheco–Ortega's motion, which Ceron joined.

¶ 7 At the *Brickey* hearing, the magistrate indicated that she was concerned both with whether the prosecutor had acted in good faith and with whether the codefendants had been prejudiced by the State's decision to refile the criminal charges the same day that the magistrate had dismissed the charges without prejudice. With respect to the issue of prejudice, defense counsel acknowledged that Pacheco–Ortega was being held by the federal government due to an immigration hold. He argued, however, that "but for this case and this filing, ... he would have been processed long ago by now [and] either released back into the United States to live with his family or not. That's a matter of a separate deportation hearing." Likewise, Ceron's counsel admitted that his client was being held on separate federal charges but opined that in the absence of the pending charges, Ceron "might be eligible and might qualify for a federal release given the nature of the charges in the federal court." Next, the magistrate addressed the issue of whether the prosecutor acted in bad faith in refiling the charges. Based on her interpretation of *Brickey* and the decisions from the Utah appellate courts interpreting *Brickey*, the magistrate considered the relevant issue to be "whether or not [the prosecutor's] refiling as quickly as he did rose to the level of an abus[ive] practice and bad faith." The magistrate then found that because the prosecutor indicated at an earlier hearing that the State could not proceed without the victim's testimony, the prosecutor had acted in bad faith by refiling the charges without first assuring that the victim would be present and cooperative at the preliminary hear-

ing on those refiled charges.[3] Therefore, the magistrate concluded that the *Brickey* rule demanded the cases be dismissed with prejudice. On May 26, 2009, the magistrate issued an order formally dismissing with prejudice the refiled charges against the co-defendants, finding that "in re-filing this case[,] the State violated the standards articulated in [*Brickey*]." The State now appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 8 The State contends that the magistrate erred by dismissing the charges against codefendants because standards articulated in *Brickey* do not preclude refiling an information when the prior dismissal is based on the prosecutor's failure to proceed at the preliminary hearing and there is no evidence of abusive practices. "Interpretation of case law presents a question of law which is reviewed for correctness." *State v. Atencio*, 2004 UT App 93, ¶ 7, 89 P.3d 191 (citing *State v. Morgan*, 2001 UT 87, ¶ 1, 34 P.3d 767).

## ANALYSIS

¶ 9 According to the State, *State v. Brickey*, 714 P.2d 644, 645 (Utah 1986), does not prevent the State from refiling in this instance because the original dismissals were based on the State's inability to proceed, rather than insufficiency of the evidence to establish probable cause, and its actions did not constitute the type of potentially abusive practices that the *Brickey* rule seeks to prevent. *See id.* at 646–47. The codefendants respond that the magistrate did not err because she found that when the State refiled the cases without securing the cooperation of the victim, the State acted in bad faith and thus violated the codefendants' due process

rights identified in *Brickey*.[4] We agree with the State that the standards promulgated in *Brickey* do not prevent refiling of the charges in the instant case.

### I. The *Brickey* Rule Is Applicable when Criminal Charges Have Been Dismissed Previously for Insufficient Evidence.

¶ 10 The purpose of a preliminary hearing is to "ferret out ... groundless and improvident prosecutions," thereby protecting the accused from the "substantial degradation and expense attendant to a criminal trial," and to "conserve judicial resources and promote[ ] confidence in the judicial system." *Id.* at 646 (omission in original) (internal quotation marks omitted). At the preliminary hearing, the State bears the burden of presenting sufficient evidence to establish probable cause that the crime has been committed and that the accused has committed it. *See id.* Although "not a full-blown determination of an accused's guilt or innocence," the preliminary hearing is "nonetheless a critical stage in the criminal process, and proper consideration for a defendant's constitutional rights must be observed." *Id.* (internal quotation marks omitted). Where the State fails to meet its burden, the magistrate must dismiss the case, but "[t]he dismissal and discharge do not preclude the [S]tate from instituting a subsequent prosecution for the same offense." *See* Utah R.Crim. P. 7(i)(3). However, the State's ability to refile is not without bounds.

¶ 11 In *Brickey*, the Utah Supreme Court considered the proper balance between the State's right to prosecute criminal offenses and the defendant's due process rights. *See Morgan*, 2001 UT 87, ¶ 11, 34 P.3d 767 ("In *Brickey*, we focused on a balancing of two

---

3. The State contends that the magistrate's memory of the colloquy during the prior hearing is inaccurate. While we agree that the transcript of that hearing does not reflect direct questions about the ability to pursue the charges against the codefendants without the victim's cooperation, the implication from the exchange between the magistrate and the prosecutor is that the victim's testimony was a key component of the evidence against the codefendants. The State is correct that it never indicated that prosecution was impossible in the absence of the victim's

testimony. However, the prosecutor expressly indicated that he was unable to proceed at that time without the victim, and did not raise the possibility of proceeding at a future hearing without him.

4. Because the State challenges only the magistrate's legal conclusion about whether it could refile, we do not address the codefendants' argument that the State failed to marshal the evidence adequately.

important interests: (1) a prosecutor's right to freely prosecute, and (2) due process protections of the accused."). There, after a preliminary hearing, the magistrate dismissed the charges without prejudice for insufficient evidence. *See Brickey,* 714 P.2d at 645. In response, the prosecutor simply refiled the criminal charges before a different magistrate, who bound the accused over for trial based on the same evidence. *See id.* at 645–46. On appeal, the Utah Supreme Court held that the due process clause of the Utah Constitution prohibits the refiling of charges after a dismissal for insufficiency of the evidence absent a showing of new or additional evidence or other good cause. *See id.* at 647 (citing *Jones v. State,* 481 P.2d 169, 171–72 (Okla.Crim.App.1971)); *see also* Utah Const. art. I, § 7 ("No person shall be deprived of life, liberty or property, without due process of law."). The supreme court also held that, "whenever possible," the prosecutor must "refile the charges before the same magistrate who does not consider the matter de novo, but looks at the facts to determine whether the new evidence or changed circumstances are sufficient to require a reexamination and possible reversal of the earlier decision dismissing the charges." *Brickey,* 714 P.2d at 647. However, the *Brickey* holding was expressly limited to instances where criminal charges have previously been dismissed for insufficient evidence. *See id.* at 645; *see also Morgan,* 2001 UT 87, ¶ 11, 34 P.3d 767 (stating that the *Brickey* court, "held that *after a magistrate has dismissed a charge for insufficient evidence,* state due process forbids refiling the charge unless the State can show that new or previously unavailable evidence has surfaced, or that other good cause justifies refiling" (emphasis added) (internal quotation marks omitted)).

¶ 12 While reviewing its own analysis in the *Brickey* case, the supreme court in *State v. Morgan,* 2001 UT 87, 34 P.3d 767, noted that one of the underlying purposes of the "*Brickey* rule is to protect defendants from intentional prosecutorial harassment arising from repeated filings of groundless claims before different magistrates in the hope that some magistrate will eventually bind the defendants over for trial." *See id.* ¶ 13. A second purpose is to prevent "the State from intentionally holding back crucial evidence to impair a defendant's pretrial discovery rights and to ambush her at trial with the withheld evidence. Such action would prejudice the defendant's right to a fair trial and would thus be in contravention of important due process rights." *Id.* ¶ 14. The *Morgan* court then identified "forum shopping by harassing a defendant through repeated filings of groundless and improvident charges" and "withholding evidence" as "overzealous practices" and noted that, to the extent those "practices may infringe on a defendant's right to due process, *Brickey* limits the State's ability to refile charges that have been dismissed for insufficient evidence." *See id.* ¶ 15. In *State v. Redd,* 2001 UT 113, 37 P.3d 1160, the supreme court added to the list of potentially abusive practices, noting that the State may not refile charges after a dismissal for insufficient evidence where prosecutor fails to provide "evidence for an essential and clear element of a crime at a preliminary hearing." *See id.* ¶ 20.

¶ 13 However, the *Morgan* court also clarified that the *Brickey* rule does not prevent "refiling generally or preclude refiling where a defendant's due process rights are not implicated." *See Morgan,* 2001 UT 87, ¶ 15, 34 P.3d 767. Rather, refiling is only presumptively barred "when potential abusive practices are involved." *See id.* ¶ 16. The abusive practices identified by our supreme court arise where the State unsuccessfully presents evidence at a preliminary hearing and then refiles the same charges with a different magistrate in the hope of obtaining a more favorable result. *See id.* ¶ 15. Importantly, when the prosecutor in good faith is unable to proceed at the preliminary hearing or when the prosecutor innocently miscalculates the quantum of evidence necessary to establish probable cause to bind over the defendant, Utah courts have found that the prosecutor's mistakes are not the type of practices that implicate the defendant's due process rights. In those instances, the State may refile notwithstanding the *Brickey* rule. *See id.* ¶ 21; *State v. Atencio,* 2004 UT App 93, ¶ 17, 89 P.3d 191.

¶ 14 Based on these decisions, we conclude that the restrictions on refiling identified in

*Brickey* are limited to instances where the criminal charges have been previously dismissed after a preliminary hearing at which the State presented evidence that the magistrate deemed insufficient to bind the defendant over for trial. Here, the criminal charges were dismissed because the parties, on three occasions and for various reasons, were unable to proceed. The State has never been put to its proof at a preliminary hearing, and thus, there has not yet been a determination of whether the State can meet its burden to establish probable cause that the offenses were committed and that the codefendants committed them. Consequently, *Brickey* does not govern whether the State could refile the charges after the magistrate dismissed them for failure to proceed in a timely fashion.

## II. Prior Decisions from Our Appellate Courts Do Not Mandate Dismissal of the Charges Against Codefendants with Prejudice.

¶ 15 Notwithstanding the narrowness of *Brickey*'s holding, the codefendants argue that the subsequent decisions in *State v. Rogers*, 2006 UT 85, 151 P.3d 171, and *State v. Atencio*, 2004 UT App 93, 89 P.3d 191, stand for the idea that the "due process inquiry is not limited to whether the case was dismissed for insufficient evidence at preliminary hearing, and instead includes an assessment of whether the State engaged in abusive practice regardless of whether the case was dismissed at preliminary hearing for insufficient evidence." While a defendant is entitled to due process at all stages of the criminal prosecution, we are not convinced that either of the decisions relied upon by the codefendants indicate that the specific abusive practices identified as support for the *Brickey* rule support the dismissal with prejudice of the charges in this case.

¶ 16 In *Rogers*, the Utah Supreme Court first reversed this court's holding that *Brickey* prevented the magistrate from granting a continuance to allow the State to prepare and present additional evidence, concluding "that *Brickey* does not apply." *See Rogers*, 2006 UT 85, ¶ 1, 151 P.3d 171. The court then indicated that the "magistrate's discretion to

grant continuances is not limitless." *See id.* ¶ 19. Relying on Oklahoma authority, the model for the *Brickey* rule, *see State v. Brickey*, 714 P.2d 644, 647–48 (Utah 1986) (citing *Jones v. State*, 481 P.2d 169, 171 (Okla.Crim.App.1971)), the *Rogers* court explained that where the prosecutor miscalculates the evidence needed to establish probable cause, it is within the discretion of the magistrate to grant a continuance to allow the prosecutor to present other witnesses or evidence that can strengthen the proof. *See id.* ¶ 20 (citing *Harper v. District Court*, 484 P.2d 891 (Okla.Crim.App.1971)). In doing so, our supreme court explained that the magistrate must exercise its discretion reasonably:

> [I]t would be unreasonable to grant a continuance to afford the prosecution more time to investigate or develop new evidence. However, it would be reasonable to grant a continuance when the prosecution, in good faith, fails to present sufficient evidence but the necessary evidence is reasonably available. Long or unspecified continuances would rarely be proper, and brief ones, where the magistrate is convinced that due process for the accused is protected and justice is otherwise served, would rarely be improper.

*Id.* ¶ 21. The *Rogers* court distinguished between continuances and dismissals and did not address the due process requirements applicable when the charges were previously dismissed for failure to proceed, rather than for insufficient evidence. *See id.* ¶¶ 13–16.

¶ 17 The codefendants also rely on *Atencio*, a decision of this court issued two years before the supreme court's decision in *Rogers*. *See Atencio*, 2004 UT App 93, 89 P.3d 191. There, the State charged the defendant with various drug-related offenses, but could not proceed at the time scheduled for the preliminary hearing because the toxicology report had not been completed. *See id.* ¶ 2. At the continued preliminary hearing, the prosecutor could not locate her case file. *See id.* ¶ 3. Initially, she attempted to proceed without it and called her first witness. *See id.* ¶ 4. Almost immediately, however, the prosecutor realized that she needed the file to proceed and requested a further continuance. *See id.* The magistrate dismissed the

charges without prejudice, and the prosecutor refiled them two days later. *See id.* ¶ 5. The refiled charges were assigned to a different judge, who granted the defendant's motion to dismiss under *Brickey. See id.* On appeal, this court reversed, noting that "although the preliminary hearing had technically begun and one witness had been sworn in, the prosecutor had not presented any evidence and the case was dismissed based on her inability to proceed rather than insufficient evidence." *See id.* ¶¶ 15, 21. The *Atencio* court also relied on decisions from Oklahoma, *see id.* ¶¶ 16–17, which limit refiling restrictions to charges refiled after being dismissed for insufficient evidence, *see Browning v. State,* 648 P.2d 1261, 1263 (Okla. Crim.App.1982) ("[T]he appellant mistakenly relies upon [cases like *Brickey,*] for they refer to instances where the State presented insufficient evidence at the preliminary hearing; whereas in the appellant's case, the State was not ready to present evidence at the first preliminary hearing."); *Martinez v. State,* 569 P.2d 497, 499 (Okla.Crim.App. 1977) (holding that the Oklahoma rule upon which *Brickey* was patterned has no application where the charges were dismissed due to the absence of the key witness at two preliminary hearings); *Lampe v. State,* 540 P.2d 590, 595–96 (Okla.Crim.App.1975) (holding that under Oklahoma's procedural rules and concepts of due process, dismissal of criminal charges on two occasions due to the failure of the complaining witness to appear at the preliminary hearing did not prevent the state from refiling the charges). Based on those decisions, this court held in *Atencio* that "because the original charges against [the defendant] were dismissed for failure to proceed, rather than for insufficient evidence, the State was not required to support the refiled charges with 'new or previously unavailable evidence.'" *See Atencio,* 2004 UT App 93, ¶ 21, 89 P.3d 191 (quoting *Brickey,* 714 P.2d at 647).

¶ 18 The *Atencio* court also responded to the defendant's claim that the prosecutor's decision to end the preliminary hearing prematurely and to refile the charges constituted forum shopping. *See id.* ¶ 17. The court concluded that the prosecutor innocently misplaced her file, which did not constitute a potentially abusive practice, and that she could not engage in the forum shopping that *Brickey* sought to prevent because she never presented any evidence. *See id.* ¶¶ 15, 17 & n. 5. As such, the court held that "the State did not abuse Defendant's due process rights when it refiled the charges because the prosecutor did not present any evidence at the preliminary hearing and there was no evidence of prosecutorial misconduct." *Id.* ¶ 19. In doing so, this court may have conflated the analysis of whether the *Brickey* rule applies when the case is dismissed for failure to proceed with the analysis of whether the defendant's due process rights were violated by any potentially abusive practices when the prosecutor began, but did not complete, the preliminary hearing. Notwithstanding that confusion, we do not agree that the *Atencio* decision extends the *Brickey* rule to charges dismissed before the preliminary hearing results in the magistrate's conclusion that there is insufficient evidence to bind the defendant over for trial.

¶ 19 The limitation of the *Brickey* rule to situations in which the charges were dismissed for insufficient evidence makes sense because the abusive practices identified in connection with that rule are not implicated when charges are dismissed before consideration of the sufficiency of the evidence. Although the codefendants claim that the State engaged in misconduct by refiling in front of a different magistrate, as in *Rogers* and *Atencio,* there is no danger of inappropriate forum shopping here. Because the State never put on its evidence at a preliminary hearing, there has been no determination by the original magistrate on the sufficiency of the evidence. Thus, there has been no result on the merits to "shop" to a different judge in the hope of obtaining a better result. Furthermore, it would be impossible for the magistrate to "look[ ] at the facts to determine whether the new evidence or changed circumstances are sufficient to require a re-examination and possible reversal of the earlier decision dismissing the charges," *see Brickey,* 714 P.2d at 647, because no evidence has yet been presented. Where there has not yet been a determination of whether the evidence is sufficient,

there is no danger of "prosecutorial harassment arising from repeated filings of groundless claims before different magistrates in the hope that some magistrate will eventually bind the defendant over for trial." *See State v. Morgan*, 2001 UT 87, ¶ 13, 34 P.3d 767. For the same reason, there is no basis to conclude that dismissal with prejudice is needed to prevent "the State from holding back crucial evidence to impair a defendant's pretrial discovery rights and to ambush her at trial with the withheld evidence," *see id.* ¶ 14, because no evidence has yet been presented. At this point, the magistrate does not know what evidence will be presented at the preliminary hearing or whether it is sufficient to bind the codefendants over for trial. *See id.* Without the benefit of a prior preliminary hearing, it is also impossible to determine whether the State is attempting to refile charges after failing to provide "evidence for an essential and clear element of a crime at a preliminary hearing." *See State v. Redd*, 2001 UT 113, ¶ 20, 37 P.3d 1160. Thus, we conclude that the restrictions on refiling criminal charges identified in *Brickey* and the cases interpreting it are limited to instances where the charges have previously been dismissed for insufficient evidence of probable cause.

### III. General Notions of State Due Process Did Not Bar Refiling of the Criminal Charges.

■ ¶ 20 The codefendants further contend that Utah's due process requirements transcend the *Brickey* rule and impose restrictions on the refiling of criminal charges even where no determination has yet been made on the sufficiency of the evidence. We agree that even in the absence of the *Brickey* rule, the codefendants have due process rights that guarantee them "fundamental fairness." *See Morgan*, 2001 UT 87, ¶ 15, 34 P.3d 767 (holding that fundamental fairness is the "touchstone of due process"). Nevertheless, we are not convinced that the codefendants' due process rights have been infringed upon by refiling the charges here.

¶ 21 Initially, we note the important limits on the authority of the judicial branch of government to restrict the refiling of criminal charges by the executive branch. *See* Utah Const. art. V, § 1 (requiring the separation of powers). Although not directly on point, we find the reasoning of the Utah Supreme Court's decision in *State v. Greuber*, 2007 UT 50, 165 P.3d 1185, instructive. There, the defendant argued that his trial counsel's ineffectiveness caused him to forego the plea deal offered by the State. *See id.* ¶ 5. Because the defendant was provided a fair trial, the supreme court agreed with this court that the defendant had not been prejudiced. *See id.* ¶ 12. In rejecting the contrary view adopted by some courts, the *Greuber* court noted the inherent difficulty in fashioning an appropriate remedy for the claimed harm caused when the defendant rejects a plea offer and is subsequently convicted after a fair trial. *See id.* ¶ 14. While acknowledging that "some courts have required the prosecution to give the defendant the same offer he had before trial," our supreme court rejected that approach, stating, "Under the doctrine of separation of powers, we do not believe courts have the power, in the absence of prosecutorial misconduct, to require the prosecution to dismiss charges . . . ." *See id.* ¶ 15. Thus, we consider the codefendants' contention that due process concerns independent of the *Brickey* rule prohibited the State from refiling the charges against them within the context of the corresponding restrictions of the separation of powers clause, which requires a finding of prosecutorial misconduct before criminal charges can be dismissed with prejudice. *See* Utah Const. art. V, § 1.

¶ 22 The codefendants first contend that the prosecutor engaged in abusive practices because they have been inconvenienced by the multiple delays involved in moving this case forward, during which they have been deprived of their liberty. In *State v. Morgan*, 2001 UT 87, 34 P.3d 767, the Utah Supreme Court explained that "due process is not concerned with ordinary levels of inconvenience because the nature of the criminal justice system necessarily inconveniences those individuals who have been accused of crimes." *Id.* ¶ 22 (internal quotation marks omitted). Thus, we must determine whether the delay here was atypical enough to implicate the codefendants' due process rights.

First, we agree that the codefendants were in jail a considerable amount of time, especially in light of the requirement of rule 7 of the Utah Rules of Criminal Procedure, which states that in the absence of good cause for an extension, the State must establish probable cause within ten days if a defendant is in custody. *See* Utah R.Crim. P. 7(h)(2). We note, however, that because of the immigration charges against one codefendant and the federal charges pending against another, it is speculative whether either codefendant would have been released in the absence of the pending state criminal charges. And while the magistrate considered this issue, there is no finding indicating that the codefendants were held solely as a result of the state charges or that there was not good cause for an extension. Nor is there any finding by the magistrate that the prosecution was wholly or primarily responsible for the delay that did occur.

¶ 23 Although the prosecutor perhaps should have anticipated that his key witness, who was also facing criminal charges, would need his own counsel, there is no suggestion that he was responsible for the failure to have the victim's defense counsel timely appointed so that the preliminary hearing could proceed on the second scheduled date. The victim was present on the first two dates set for the preliminary hearing. On the third date, however, the victim did not appear. Again, the lack of communication among various State players that led to the prosecutor's surprise that the victim had been released might be properly attributed to the prosecutor in terms of evaluating responsibility for the continuances or "good cause" for a further extension under rule 7(h)(2). However, even if the prosecutor could have done more to secure the victim's presence at the third scheduled preliminary hearing, there is no finding that the failure to do so amounted to "prosecutorial misconduct" as required to dismiss the charges with prejudice. *See Greuber*, 2007 UT 50, ¶ 15, 165 P.3d 1185.

¶ 24 Nor do the codefendants argue that the prosecutor acted in bad faith in being unable to proceed at the scheduled preliminary hearings. Rather, the codefendants argue that the magistrate was correct in dismissing the charges with prejudice due to the prosecutor's failure to follow the magistrate's instructions to comply with *Brickey* by securing the presence and cooperation of the victim before refiling. Where we have determined that nothing in *Brickey* prohibited the prosecutor from refiling the charges, and the magistrate told the prosecutor to make its own assessment of whether it could refile in good faith in light of the *Brickey* rule, we conclude that the magistrate's finding of bad faith was premised on a legally erroneous interpretation of the admittedly somewhat confusing case law interpreting *Brickey*. *See generally State v. Atencio*, 2004 UT App 93, ¶¶ 17–21, 89 P.3d 191 (discussing the defendant's argument that the prosecutor prematurely ended the preliminary hearing to engage in forum shopping, despite its conclusion that the *Brickey* rule was inapplicable because the charges were dismissed for failure to proceed).

¶ 25 We are also not convinced that our interpretation of the proper separation of powers between the executive and judicial branches will result in the unfettered abuse predicted by the codefendants. Like the right to grant a continuance considered in *State v. Rogers*, 2006 UT 85, ¶ 19, 151 P.3d 171, the magistrate's discretion to allow delay in prosecuting a defendant is not limitless. *See id.* ¶ 19 (stating that the "magistrate's discretion to grant continuances is not limitless"). In recognition of the due process rights of defendants, our rules include protections against delay in prosecuting charges. Rule 25(b) of the Utah Rules of Criminal Procedure provides that the court shall dismiss an information or indictment when "[t]here is unreasonable or unconstitutional delay in bringing defendant to trial; ... or [t]he prosecution is barred by the statute of limitations." *See id.* R. 25(b). The rule also requires that the "reason for any such dismissal shall be set forth in an order and entered in the minutes." *See id.* R. 25(c). Where the dismissal is for unreasonable delay, "further prosecution for the offense shall not be barred and the court may make such orders with respect to the custody of the defendant pending the filing of new charges as the interest of justice may require. Otherwise the defendant shall be discharged and

bail exonerated." *See id.* R. 25(d). In contrast, if the "order of dismissal [is] based upon unconstitutional delay in bringing the defendant to trial or based upon the statute of limitations," it is "a bar to any other prosecution for the offense charged." *See id.* Here, there is no indication that the magistrate dismissed the charges for either unreasonable or unconstitutional delay. Nor do we conclude that it is plain from this record that the delay here rose to constitutional levels that would justify a dismissal with prejudice. *See generally Johnson v. Johnson,* 2010 UT 28, ¶ 13, 234 P.3d 1100 (indicating that the appellate court may affirm "on any grounds apparent from the record").

¶ 26 In addition, the magistrate has the discretion to determine whether, and the conditions under which, a defendant will be held in custody while charges are pending. *See* Utah Const. art. I, § 8 (providing that, except in limited circumstances, all defendants shall be bailable); Utah Code Ann. § 77–1–6(1)(h) (2008) (providing for the setting of bail and for trial within thirty days if the defendant cannot post bail and the business of the court permits); Utah R.Crim. P. 7(d)(5) (requiring the magistrate to set bail); Utah R.Crim. P. 25 (providing that the court may make such orders with respect to custody of the defendant upon dismissal of charges as the interest of justice may require). Thus, delay by the prosecution in binding the defendant over for trial can result in release of the defendant from custody. And, if the delay exceeds constitutional limits or the statute of limitations adopted by the legislature for that crime, it can result in dismissal of the charges with prejudice. However, such a remedy was not available here.

¶ 27 Despite our holding, we understand the magistrate and defense counsel's frustration regarding the State's immediate refiling of the charges against codefendants. Although the magistrate may have incorrect-ly recalled that there was an explicit discussion about whether the prosecutor could go forward without the victim at some future hearing, it is easily inferred from the colloquy between the two that, at least at that time, the prosecutor thought the victim's testimony was essential to the State's case. Ultimately, the decision of whether to file criminal charges falls upon the executive branch and is subject to testing at a preliminary hearing in the courts. Nevertheless, the premature filing of criminal charges inconveniences the defendant, wastes judicial resources, requires defense counsel—often also funded by the state's taxpayers—to attend multiple preliminary hearings, and impinges on the limited time available to our already overburdened court staff, including the magistrate. Individual prosecutors are officers of the court who must comply with the rules of professional conduct and orders of the court. Where unreasonable delay is caused by the prosecutor's ineptitude, lack of preparation, or failure to comply with court orders, the court may sanction the individual prosecutor. However, "[d]ismissal of a criminal information as a sanction against the prosecutor is rarely appropriate, even if the prosecutor is in contempt of court." *Salt Lake City v. Dorman–Ligh,* 912 P.2d 452, 456 (Utah Ct.App.1996) (reversing the trial court's order dismissing criminal charges with prejudice as a sanction for the prosecutor's failure to comply with the court's order to be present and ready to proceed at a scheduled hearing).[5] Although the magistrate erred in dismissing the charges with prejudice as a sanction for the prosecution's delay, in appropriate circumstances, sanctions may be imposed on the individual prosecutor.

¶ 28 In sum, we do not agree that refiling the charges after a dismissal for failure to proceed violated the *Brickey* rule. In addition, we see nothing in the careful balance reached in *Brickey* between the executive

---

5. Furthermore, "[f]or the court to hold one in contempt of an order, that order must be … sufficiently specific and definite as to leave no reasonable basis for doubt regarding its meaning." *State v. L.A.,* 2010 UT App 356, ¶ 13, 245 P.3d 213 (internal quotation marks omitted); *see also Von Hake v. Thomas,* 759 P.2d 1162, 1172 (Utah 1988) ("As a general rule, in order to prove contempt for failure to comply with a court order it must be shown that the person cited for contempt knew what was required, had the ability to comply, and intentionally failed or refused to do so." (citations omitted)).

branch's power to prosecute and the court's role in protecting the due process rights of the defendant that would permit the magistrate to impose restrictions on the State's ability to refile here. In the absence of a preliminary hearing where the State's remaining evidence against the codefendants could be tested, the magistrate's finding that the prosecutor was not credible in suggesting he could proceed without the victim's testimony infringed upon the separate powers of the executive branch to prosecute crimes freely. Despite the magistrate's assumptions about the need for the victim's testimony based on the prosecutor's inability to proceed on the prior hearing date, it is the function of the executive to make decisions about when and whether to prosecute. As the magistrate correctly noted when she initially dismissed the charges without prejudice, "I'm not going to make any restrictions about when the State can refile because I'm not in a position to be reviewing that."

## CONCLUSION

¶ 29 The *Brickey* rule does not prevent the State from refiling charges that have been previously dismissed at a preliminary hearing due to the prosecutor's inability to proceed. However, general notions of fundamental fairness prohibit the prosecutor from engaging in abusive practices that impinge on the defendant's right to due process, even where the *Brickey* rule is inapplicable. The magistrate's finding of bad faith was based solely on its erroneous conclusion that the prosecutor failed to comply with the *Brickey* rule. Consequently, the magistrate erred when she dismissed the cases with prejudice.

¶ 30 Reversed.

¶ 31 WE CONCUR: STEPHEN L. ROTH and MICHELE M. CHRISTIANSEN, Judges.