2001 UT 87

**STATE of Utah, Plaintiff and Petitioner,**

v.

**Anna Marie MORGAN, Defendant and Respondent.**

**No. 20000257.**

Supreme Court of Utah.

Oct. 19, 2001.

Mark L. Shurtleff, Att'y Gen., Christine F. Soltis, Asst. Att'y Gen., Salt Lake City, for petitioner.

Joan C. Watt, Salt Lake City, for respondent.

HOWE, Chief Justice:

¶1 We granted certiorari to review the decision in *State v. Morgan*, 2000 UT App. 48, 997 P.2d 910, in which the court of appeals reversed defendant's convictions for possession of methamphetamine with intent to distribute, a second degree felony, in violation of section 58–37–8(1)(a)(iii) of the Utah Code, and possession of marijuana, a class B misdemeanor, in violation of section 58–37–8(2)(a)(i). This court has jurisdiction pursuant to its grant of certiorari review. Utah Code Ann. § 78–2–2(3)(a) & (5) (1996). Our interpretation of case law, necessary in this review, presents a question of law reviewed for correctness. *State v. Larsen*, 865 P.2d 1355, 1357 (Utah 1993).

## BACKGROUND

¶2 Defendant was charged with second degree felony possession of methamphetamine with intent to distribute and misdemeanor possession of marijuana. The arresting officer testified at the preliminary hearing that during an inventory search of defendant's vehicle following her arrest on outstanding warrants, he discovered a large amount of methamphetamine in a baggie under the driver's seat, three smaller bags of methamphetamine together with several empty one-by-one-inch baggies in defendant's purse, and a baggie of marijuana in the glove compartment. According to the officer, the methamphetamine found in defendant's purse, together with its packaging, weighed approximately 5 grams. The toxicology report indicated that if the packaging was excluded, the methamphetamine found in defendant's purse weighed approximately 2.4 grams.

¶3 The officer testified that he had only one year of police experience and one evening of police officer standards training in drug recognition, packaging, and use. Based on this limited experience, the officer testified, over objection from defense counsel, that the substances appeared to be illegal narcotics. The prosecutor then asked if the officer had an "opinion as to why Ms. Morgan would possess these substances in these quantities?" In response, the officer stated:

> Based on my training and experience, it's my opinion that due to the amount and the bag found underneath the seat and the other plastic baggies, that that substance would probably be separated into smaller baggies and sold for profit.

¶4 The magistrate found the officer's testimony sufficient to establish possession of the drugs, but insufficient to establish intent to distribute the methamphetamine, ruling the officer's training insufficient to render the opinion. The prosecutor immediately moved to reopen the preliminary hearing to permit another officer who had already been sworn to testify as an expert witness regarding evidence of intent. The magistrate denied the motion and reduced the second degree felony distribution charge to third degree felony possession and bound defendant over on the reduced offense. At a subsequent hearing, the magistrate granted the prosecutor's request to dismiss the information without prejudice, effectively permitting the State to refile the original charges to present additional evidence on intent. The magistrate immediately scheduled a new preliminary hearing in anticipation of the refiling.

¶ 5 At the second preliminary hearing, the arresting officer who testified in the first hearing presented nearly identical testimony. Testimony of a second officer was admitted on the issue of intent to distribute. This officer had been a police officer for nearly twenty years, had worked as a narcotics investigator for approximately three years, had been a street investigator for ten years, and had received training through the Drug Enforcement Agency and the Utah Drug Academy. Relying on the toxicology report and his own experience and training, the officer testified that

(1) the methamphetamine found under the seat in defendant's vehicle weighed 36.1 grams, an amount "generally not consistent with just individual or personal use";

(2) 36.1 grams equated to nearly 1.5 ounces;

(3) the methamphetamine found in defendant's purse weighed 2.4 grams, and was an amount "more in line" with an individual's personal use;

(4) street packaging of methamphetamine was usually 3–6 grams in a one-by-one-inch baggie similar to the empty ones found in defendant's purse;

(5) the marijuana found in the glove compartment weighed 3.7 grams, an amount "more than just simply for personal use, ... especially when you take into consideration the other packaging materials" that were found;

(6) the methamphetamine, marijuana, and packaging materials when taken together were "more consistent" with distribution than personal use.

¶ 6 Provided with the additional evidence at this second preliminary hearing, the magistrate concluded that there was sufficient evidence to bind over defendant as charged. Defendant then informed the magistrate that she was "anticipating filing a *Brickey* motion" and asked if the motion should be filed with the magistrate or the trial judge. The magistrate responded that the motion should be filed with the trial judge.

¶ 7 At trial, defendant moved to dismiss the information, arguing that because the second officer was sworn and available at the first preliminary hearing, his testimony was not "new or previously unavailable" evidence as required, according to defendant, for refiling under *State v. Brickey*, 714 P.2d 644, 647 (Utah 1986). The prosecutor maintained that due process protections articulated in *Brickey* did not preclude refiling in this case. The court denied the motion to dismiss. Defendant did not petition for interlocutory review.[1]

¶ 8 Defendant was convicted of second degree felony possession of methamphetamine with intent to distribute and misdemeanor possession of marijuana. She was sentenced to the statutory term of imprisonment for each offense, which terms were suspended except for sixty days, and placed on supervised probation for thirty-six months. She was also fined $5,750, which was suspended except for $750. Defendant appealed.

¶ 9 On appeal, the State argued that the prosecutor's "innocent miscalculation" of the evidence, i.e., the inadequate evidence to support a finding of intent to distribute, constituted "other good cause" sufficient either to reopen or to refile the case. *State v. Morgan*, 997 P.2d 910, 2000 UT App. 48, ¶¶ 16–18. In a split decision, the court of appeals concluded that refiling the dismissed information was precluded under *Brickey* and reversed defendant's convictions. *Id.* The court reasoned that *Brickey* demands either (1) "new or previously unavailable evidence," or (2) "other good cause" to justify refiling. *Id.* at ¶¶ 15–16. The court determined that known and available evidence, i.e., the testi-

---

1. A defendant normally must seek interlocutory review of a district court's denial of a motion to dismiss a bindover order since conviction renders any defect moot. *State v. Humphrey*, 823 P.2d 464, 467 n. 6 (Utah 1991); *see also State v. Whittle*, 1999 UT 96, ¶ 13, 989 P.2d 52 (stating conviction renders any error in the grand jury proceeding harmless).

Here, however, defendant alleged that her trial counsel was ineffective for failing to petition for interlocutory review of the trial court's *Brickey* ruling. Since resolution of defendant's ineffectiveness claim would necessarily involve consideration of the merits of the underlying *Brickey* ruling, the State did not argue that defendant's conviction mooted the issue, and we do not consider that issue here.

mony of the second officer, cannot amount to "other good cause" because allowing such testimony would eviscerate the first limitation of "new or previously unavailable evidence" as the officer's testimony was available at the first preliminary hearing. *Id.* The State seeks reversal of the court of appeals' decision.

## ANALYSIS

¶ 10 In a preliminary hearing, a magistrate must dismiss an information and discharge a defendant if the State's evidence fails to establish probable cause to believe that the defendant has committed the charged crime. Utah R.Crim. P. 7(h)(3). However, "[t]he dismissal and discharge do not preclude the State from instituting a subsequent prosecution for the same offense." *Id.* Rule 7, then, permits refiling as a general proposition.

¶ 11 We determined in *State v. Brickey,* 714 P.2d 644 (Utah 1986), that State refiling of a dismissed charge is limited by due process protections of the Utah Constitution. *See* Utah Const. art. I, § 7. We held that after a magistrate has dismissed a charge for insufficient evidence, state due process forbids refiling the same charge unless the State "can show that new or previously unavailable evidence has surfaced, or that other good cause justifies refiling." *Brickey* at 647. In *Brickey,* we focused on a balancing of two important interests: (1) a prosecutor's right to freely prosecute, and (2) due process protections of the accused. *Id.* We indicated that Oklahoma's procedural approach best achieved the proper balance among these competing interests. *Id.*

¶ 12 We noted that "courts have had occasion to scrutinize the exercise of the broad discretion accorded prosecutors, and that scrutiny has revealed that the prosecutor's good faith is a fragile protection for the accused." *Id.* To curb the potential for abuse of this discretion, we required prosecutors, "whenever possible, [to] refile charges before the same magistrate who does not consider the matter de novo, but looks at the facts to determine whether new evidence or changed circumstances are sufficient to require a re-examination." *Id.* Therefore, we adopted the Oklahoma approach that prohibits a "prosecutor from refiling criminal charges earlier dismissed for insufficient evidence unless the prosecutor can show that new or previously unavailable evidence has surfaced or that other good cause justifies refiling." *Id.* (citing *Jones v. State,* 481 P.2d 169, 171 (Okla. Ct.App.1971)).

¶ 13 The policies and protections underlying the *Brickey* rule provide guidance in understanding the rule and properly defining its intended ambit. First, we noted that granting the State unbridled discretion in determining whether to refile charges raises the intolerable specter of the State's continually harassing a defendant who previously had charges dismissed for insufficient evidence. *Brickey,* 714 P.2d at 646–47. Thus, one important purpose underlying the *Brickey* rule is to protect defendants from intentional prosecutorial harassment arising from repeated filings of groundless claims before different magistrates in the hope that some magistrate will eventually bind the defendants over for trial. *Id.* at 647; *accord State v. Fisk,* 966 P.2d 860, 864 (Utah Ct.App.1998) (*Brickey* rule "ensures that the defendant is not harassed by repeated charges on tenuous grounds").

¶ 14 A second significant purpose inheres in the dicta of the case interpreting "other good cause" to include an innocent miscalculation of the evidence necessary to establish probable cause for a bindover. *Id.* at 647 n. 5. Although *Brickey* did not reach the issue of what might constitute "other good cause," we noted in a footnote that other jurisdictions have found that good cause may exist "when a prosecutor innocently miscalculates the quantum of evidence required to obtain a bindover." *Id.* at 647 n. 5 (citing *Harper v. District Court,* 484 P.2d 891, 897 (Okla. 1971)). This language implies an additional underlying purpose of preventing the State from intentionally holding back crucial evidence to impair a defendant's pretrial discovery rights and to ambush her at trial with the withheld evidence. Such action would prejudice the defendant's right to a fair trial and would thus be in contravention of important due process rights.

¶ 15 In sum, we hold that "fundamental fairness," the touchstone of due process, precludes, without limitation, a prosecutor from seeking an unfair advantage over a defendant through forum shopping by harassing a defendant through repeated filings of groundless and improvident charges, or from withholding evidence. Overreaching by the State, in any of its forms, is the chief evil we sought to prevent in *Brickey*. To the extent that these overzealous practices may infringe on a defendant's right to due process, *Brickey* limits the State's ability to refile charges that have been dismissed for insufficient evidence. *Brickey* does not, however, indicate any intent to forbid refiling generally or preclude refiling where a defendant's due process rights are not implicated. The lodestar of *Brickey*, then, is fundamental fairness.

¶ 16 As a result, when potential abusive practices are involved, the presumption is that due process will bar refiling. When potential abusive practices are not involved, we hold that there is no presumptive bar to refiling. *See, e.g., State v. Elling*, 19 Ariz.App. 317, 506 P.2d 1102, 1103 (1973) (where no forum shopping involved reprosecution was permissible); *People v. Sabell*, 708 P.2d 463, 466 (Colo.1985) (where court found no oppressive tactics, refiling was deemed permissible); *State v. Bacon*, 117 Idaho 679, 791 P.2d 429, 433–34 (1990) (no evidence of bad faith or purposeful harassment; reprosecution permissible); *Stockwell v. State*, 98 Idaho 797, 573 P.2d 116, 126 (1977) (stating "refiling is not prohibited unless done without good cause or in bad faith"); *State v. Vargo*, 139 Mich.App. 573, 362 N.W.2d 840, 842–43 (1985) (holding simple "neglect" rather than "deliberate attempt to harass defendant" justified refiling); *State v. Dail*, 228 Neb. 653, 424 N.W.2d 99, 102 (1988) (where no forum shopping was involved, reprosecution was permissible); *Chase v. State*, 517 P.2d 1142, 1143 (Okla.Ct.App.1973) (mistaken testimony in first preliminary hearing justified refiling). We now turn to the court of appeals' decision in *Morgan* and apply our reasoning as stated above.

¶ 17 The court of appeals properly acknowledged *Brickey's* holding that discovery of "new or previously unavailable evidence" or "other good cause" would justify refiling. *Morgan*, 997 P.2d 910, 2000 UT App. 48 at ¶ 15. However, *Morgan* then effectively rejects the notion that an innocent miscalculation of the quantum of evidence necessary for a bindover may, in and of itself, suffice as another subcategory of "other good cause" for refiling charges, stating:

> [U]ntil and unless our supreme court directs otherwise, the innocent miscalculation of the quantum of evidence required to obtain a bindover is not grounds for refiling the dismissed charge unless new or previously unavailable evidence results from a nondilatory investigation prompted by realization of the miscalculation.

*Id.* at ¶ 16.

¶ 18 The court of appeals imposes a narrow requirement that to establish an innocent miscalculation the State must in every case produce new or previously unavailable evidence that it could not have reasonably discovered earlier. Its linkage of an "innocent miscalculation" with "new or previously unavailable evidence" in effect envelops the former category in the latter, since the opinion precludes establishing an innocent miscalculation without a showing of new or previously unavailable evidence.

¶ 19 However, *Brickey's* analysis indicates that "other good cause" represents a broad category with "new or previously unavailable evidence" as but two examples of subcategories that come within its definition. *Brickey*, 714 P.2d at 646–48. "Other good cause," then, on its face, simply means additional subcategories, other than "new evidence" or "previously unavailable evidence," that justify refiling. While we noted but did not specifically adopt innocent miscalculation as a subsection of other good cause in *Brickey*, we do so today. *Id.* at 648. In so doing, we emphasize that the miscalculation must be *innocent*, and further investigation must be nondilatory and not otherwise infringe on due process rights of a defendant.

¶ 20 In the case at bar, defendant faced a felony drug charge of possession with intent to distribute. Despite the presence of two police officers in court, sworn and ready to

testify, the State called only the arresting officer. *Morgan*, 997 P.2d 910, 2000 UT App. 48, ¶ 2. The magistrate determined that the evidence was insufficient to support an intent to distribute, reduced the charge to simple possession, and bound defendant over on the reduced charge. *Id.* at ¶ 3. The State indicated that it had assumed the arresting officer's testimony was sufficient and the testimony of the second officer was therefore unnecessary.

■ ¶ 21 Although the evidence was not new or unavailable at the first hearing, we hold that the failure of the prosecutor to call the second officer as a witness in this instance was an "innocent miscalculation," which, under our rule enunciated today, is "other good cause" sufficient to allow the prosecutor to refile the case. Nothing in the record indicates that fundamental fairness, the underlying threshold of the *Brickey* rule, should prohibit the prosecutor from refiling. The prosecutor simply miscalculated the quantum of evidence necessary to obtain a bindover.

■ ¶ 22 It is true that correction of the prosecutor's mistake here may inconvenience defendant. However, due process is not concerned with ordinary levels of inconvenience because the "nature of the criminal justice system necessarily inconveniences those individuals who have been accused of crimes." *People v. Noline*, 917 P.2d 1256, 1264 (Colo. 1996). In fact, from the "accused point of view, the criminal justice system always entails some level of harassment and oppression." *Id.* Instead, due process in cases such as the one before us today is concerned with potential bad faith or misconduct of prosecutors.

¶ 23 In this case, the magistrate had overruled a defense counsel objection to the sufficiency of the arresting officer's experience and training to identify the methamphetamine, marijuana, and narcotics packaging. When the prosecutor then asked for the officer's opinion on defendant's intent to distribute these items, defendant did not further object to the question or answer. Only at the conclusion of the hearing, after both parties had rested, did the magistrate voice his concern as to the sufficiency of the founda-

tion for the arresting officer's opinion on intent. The prosecutor immediately moved to reopen so that the other officer, who was present and more qualified, could testify and satisfy the magistrate's concern on proof of intent to distribute. The request was denied.

¶ 24 In the second preliminary hearing, the second officer, provided testimony that quantitatively added to the evidence the arresting officer had provided in the first hearing because of the former's superior training and experience. Where the arresting officer had minimal drug training, the second officer had been an officer for nineteen years, including two to three as a narcotics officer and ten years as a street investigator, and had received training with the D.E.A. and the Utah Drug Academy. Additionally, where the arresting officer gave testimony on the general nature of the narcotics packaging, the second officer explained the differences in for-profit and personal usage of methamphetamine in conjunction with the confiscated drugs. The magistrate viewed the difference in the quantum of evidence provided in the testimonies as significant and reversed his earlier ruling.

¶ 25 We conclude that unlike the prosecutor in *Brickey* who admitted he would refile until obtaining a bindover, the prosecutor here did not engage in forum shopping, as the second preliminary hearing was held before the same magistrate. Nor did the prosecutor refile to harass defendant, as the prosecutor attempted to reopen the preliminary hearing immediately upon recognizing the magistrate was not satisfied with the level of evidence required to bind over defendant. The prosecutor did not withhold evidence to disadvantage defendant, as the second officer was present and sworn in at the first hearing. Accordingly, this is a clear instance of a prosecutor miscalculating the quantum of evidence requisite for a bindover. As such, the prosecutor did not abuse the due process rights of defendant.

## CONCLUSION

¶ 26 We reverse the court of appeals' decision in *Morgan* and reinstate defendant's convictions.

¶ 27 Associate Chief Justice RUSSON, Justice DURHAM, Justice DURRANT, and Judge MOWER concur in Chief Justice HOWE's opinion.

¶ 28 Having disqualified himself, Justice WILKINS does not participate herein; District Judge DAVID L. MOWER sat.