IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100582-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (July 27, 2012) |
| Jeremy James Dykes, | ) | |
| | ) | 2012 UT App 212 |
| Defendant and Appellant. | ) | |

-----

Third District, Salt Lake Department, 101901771
The Honorable Michele M. Christiansen

Attorneys:     E. Rich Hawkes, Salt Lake City, for Appellant
               Mark L. Shurtleff and Jeffrey S. Gray, Salt Lake City, for Appellee

-----

Before Judges Orme, Davis, and Roth.

ROTH, Judge:

¶1     Jeremy James Dykes filed a petition for interlocutory appeal seeking review of the denial of his motion to quash the information charging him with one count of theft by receiving stolen property, a third degree felony, *see* Utah Code Ann. § 76-6-408(1) (Supp. 2011) (defining theft by receiving); *id.* § 76-6-412(1)(b) (2008) (current version at *id.* (Supp. 2011)) (classifying the level of offense).[1]  We granted his petition, and on appeal, Dykes contends that the district court was required to dismiss the charge in

---

[1]Because section 76-6-412(1) has been substantively amended since the events underlying this conviction, we cite the version then in effect.  *See* Utah Code Ann. § 76-6-412 amend. notes (Supp. 2011).  All other references to the Utah Code will be to the current version, as any amendments to those sections have no bearing on the resolution of the issue on appeal.

accordance with the rule stated in *State v. Brickey*, 714 P.2d 644 (Utah 1986), because the State had improperly refiled a criminal charge that had previously been dismissed, thus violating his due process rights. We affirm.

BACKGROUND

¶2      On April 7, 2009, a West Valley City police officer saw Dykes driving an all-terrain vehicle (ATV) on Redwood Road in West Valley City, Utah. Because he did not believe that an ATV could legally be driven on public roads, the officer directed Dykes to pull over into a driveway. At that time, the officer noticed that the ATV was only a few years old but that it had been partially repainted and that some of the paint was peeling. Dykes informed the officer that he had purchased the ATV from an acquaintance to whom he believed it was still registered because Dykes had not yet registered it in his name. The officer quickly determined not only that the ATV was registered to someone else entirely but also that it had been reported stolen several months earlier. The officer arrested Dykes.

¶3      On July 10, 2009, the State charged Dykes with second degree felony theft by receiving stolen property, which required proof either that the value of the ATV exceeded $5000 or that it was an operable motor vehicle. *See* Utah Code Ann. § 76-6-412(1)(a) ("Theft of property . . . shall be punishable . . . as a felony of the second degree if the: (i) value of the property . . . is or exceeds $5,000; [or] (ii) property stolen is a firearm or an operable motor vehicle . . . ."). At a preliminary hearing on September 3, 2009,[2] the State presented evidence that the ATV was an operable motor vehicle, and a magistrate judge found probable cause to bind Dykes over for trial on that basis. Because the State was relying on the operable motor vehicle variant of second degree theft by receiving stolen property, it did not present any evidence of the ATV's value at the preliminary hearing. Dykes moved to quash the bindover in the district court, claiming that the ATV was not an operable motor vehicle under the theft by receiving statute and that the State had failed to present evidence of the alternative that the ATV

_____

[2]The September 3 preliminary hearing was actually the second such hearing on this charge. The charge was initially dismissed without prejudice when the State's witnesses failed to appear at the first hearing. The State subsequently refiled the same charge against Dykes. The original dismissal is not at issue.

was worth at least $5000.  The court was persuaded that the ATV was not an operable motor vehicle and, in the absence of any evidence of its value, bound Dykes over for trial on a class B misdemeanor theft by receiving stolen property.  *See generally id.* § 76-6-412(1)(d) (punishing theft as a class B misdemeanor when the value of the stolen property is less than $300).  The court denied the State's motions to bind Dykes over on a class A misdemeanor offense or to reopen the preliminary hearing to present additional evidence of value.  At Dykes's request, the district court dismissed the class B misdemeanor charge without prejudice for lack of jurisdiction.  *See generally* Utah Code Ann. § 78A-5-102(8) (Supp. 2011) (identifying the circumstances under which a district court may assume jurisdiction over a class B misdemeanor, none of which are applicable in this case).

¶4     On March 9, 2010, the State refiled the theft by receiving charge as a third degree felony on the basis of value.  *See generally id.* § 76-6-412(1)(b) (punishing theft as a third degree felony where the value of the stolen property is at least $1000 but less than $5000).  Dykes moved to quash the information, alleging that refiling the charge violated his due process rights under the rule set forth in *Brickey*.  At a hearing on the motion, the State presented valuations from the Kelley Blue Book, which indicated that the ATV had an $1820 trade-in value and a suggested retail price of $2695.  The prosecutor admitted that this value evidence was generally available before the preliminary hearing in the original case, but due to his "mistake" in "assert[ing] that [an ATV is] a motor vehicle," he had "no admissible evidence" on the ATV's value to present at that hearing.  The State, citing *State v. Morgan*, 2001 UT 87, 34 P.3d 767, attributed this to an "innocent miscalculation of a quantum of evidence required" that lacked any prosecutorial "intent to abuse or an intent to harass."  The court agreed, concluding that the *Brickey* rule had not been violated because there was good cause for refiling the charge as the "prosecutor [had] innocently miscalculated the quantum of evidence" necessary to bind Dykes over on the second degree felony and Dykes had not shown that the "prosecution engaged in abusive practices in miscalculating the evidence."  Dykes appeals.


ISSUE AND STANDARD OF REVIEW

¶5     Ordinarily we review a magistrate's bindover decision with some deference, recognizing that the bindover standard is low and requires only that probable cause be presented for each element of the offense.  *See State v. Balfour*, 2008 UT App 410, ¶ 9, 198

P.3d 471. When the State refiles a charge against a defendant that has previously been dismissed for insufficient evidence, however, it must demonstrate that new or previously unavailable evidence has surfaced or other good cause justifies the filing. *See Brickey*, 714 P.2d at 647-48. We review the district court's interpretation of the *Brickey* rule for correctness. *See State v. Redd*, 2001 UT 113, ¶ 13, 37 P.3d 1160 ("A proper interpretation of case law is a question of law which we review for correctness . . . .").

ANALYSIS

¶6    "The preliminary hearing . . . acts as a screening device to ferret out . . . groundless and improvident prosecutions[, thereby] . . . reliev[ing] the accused of the substantial degradation and expense attendant to a criminal trial, but also . . . conserv[ing] judicial resources and promot[ing] confidence in the judicial system." *State v. Brickey*, 714 P.2d 644, 646 (Utah 1986) (second omission in original) (citation and internal quotation marks omitted). It is at this hearing that the State must establish a factual and legal basis to bind over a charge for trial by introducing "sufficient evidence to persuade the magistrate that there is probable cause to believe that the crime charged has been committed and that the defendant committed it." *Id.* (internal quotation marks omitted). To meet its burden, the State must "produce believable evidence of all the elements of the crime charged." *State v. Clark*, 2001 UT 9, ¶ 15, 20 P.3d 300 (internal quotation marks omitted). If the State fails to produce evidence of all the elements, then a magistrate must dismiss the charge and discharge the defendant. *See* Utah R. Crim P. 7(i)(3).

¶7    In *State v. Brickey*, 714 P.2d 644 (Utah 1986), the Utah Supreme Court held that due process prohibits a prosecutor from "refiling criminal charges earlier dismissed for insufficient evidence unless the prosecutor can show that new or previously unavailable evidence has surfaced or that other good cause justifies refiling." *Id.* at 647. *See generally* Utah R. Crim P. 7(i)(3) ("[D]ismissal and discharge do not preclude the state from instituting a subsequent prosecution for the same offense."). "The lodestar of *Brickey* . . . is fundamental fairness," *Morgan*, 2001 UT 87, ¶ 15, and this rule is meant to ensure balance between two important interests--"a prosecutor's right to freely prosecute" and "the due process protections of the accused," *id.* ¶ 11. As a means to accomplish that purpose, the *Brickey* rule focuses on potentially abusive practices, which include "intentional prosecutorial harassment arising from repeated filings of groundless claims," *id.* ¶ 13, forum shopping by the State through the "shuttl[ing of

charges] from one magistrate to another simply because a county attorney is not satisfied with the action of the [first] magistrate," *Brickey*, 714 P.2d at 647 (internal quotation marks omitted), withholding of crucial evidence by the prosecution in order to surprise the defendant at trial, *see Morgan*, 2001 UT 87, ¶ 14, and the refiling of charges after the State fails to produce "evidence for an essential and clear element of a crime at the preliminary hearing," *Redd*, 2001 UT 113, ¶ 20. To advance the goal of fundamental fairness, the supreme court has adopted a presumption that due process bars refiling when potentially abusive practices are involved. *See id.* ¶ 16. However, "[w]hen potential abusive practices are not involved, there is no presumptive bar to refiling." *Morgan*, 2001 UT 87, ¶ 16.

¶8     Dykes contends that the district court erred in denying his motion to quash the bindover because the State refiled the theft by receiving charge as a third degree felony, without new evidence or good cause as required by *Brickey*, after the original second degree felony charge had been dismissed. The State does not dispute that it did not present any new or previously unavailable evidence when it refiled the charge. The focus of the parties' arguments is instead on whether the State had "good cause" to refile. The Utah appellate courts have had only limited opportunity so far to explore the meaning of "good cause"; the Utah Supreme Court, however, has determined that the concept includes "an innocent miscalculation of the evidence necessary to establish probable cause for a bindover." *Morgan*, 2001 UT 87, ¶¶ 14, 19; *see also State v. Pacheco-Ortega*, 2011 UT App 186, ¶ 13, 257 P.3d 498 ("Importantly, when the prosecutor . . . innocently miscalculates the quantum of evidence necessary to establish probable cause to bind over the defendant, Utah courts have found that the prosecutor's mistake[ is] not the type of practice[] that implicate[s] the defendant's due process rights.").

¶9     Dykes claims that the State did not have good cause to refile because it failed to provide any evidence at all on an element of the charged offense at the preliminary hearing. *See generally Clark*, 2001 UT 9, ¶ 15 (requiring the State to "produce believable evidence of all the elements of the crime charged" at the preliminary hearing); *Redd*, 2001 UT 113, ¶ 17 (stating that "where the State refiles a charge when it has been dismissed for the State's failure to provide any evidence on a clear element of the relevant criminal statute," the State has engaged in a potentially abusive practice that presumptively bars refiling). Specifically, he contends that the State did not put on any evidence of value at the first preliminary hearing. The State, however, was proceeding under a variation of second degree felony theft by receiving that did not require proof

of value but instead required proof that the stolen item was an operable motor vehicle.[3] Because the State put on evidence, albeit unsuccessfully, intended to demonstrate that the ATV was an operable motor vehicle, it cannot be said that the State failed to present *any* evidence of an element of the crime.[4]

¶10    The question that remains, then, is whether the State had good cause to refile the theft by receiving charge as a third degree felony once the district court determined that an ATV was not an operable motor vehicle.  The State admitted that it "made a mistake" in "assert[ing] that [the ATV is] a motor vehicle."  The State contends, however, that the mistake amounted to an "innocent miscalculation of the evidence necessary for bindover."  Dykes counters that the "innocent miscalculation" type of good cause is limited to mistakes of fact, not misunderstandings of the law.

¶11    Because the *Brickey* rule is concerned with fundamental fairness, its major focus has been on curbing potentially abusive practices by the State, such as forum shopping, withholding of critical information, prosecutorial harassment through repeated filings of groundless claims, and the failure to exercise reasonable diligence in presenting evidence of the elements of the crime.  *See generally State v. Redd*, 2001 UT 113, ¶ 17, 37 P.3d 1160; *State v. Morgan*, 2001 UT 87, ¶¶ 13-14, 34 P.3d 767; *Brickey*, 714 P.2d at 647.  Indeed, it is "[t]he[se] policies and protections underlying the *Brickey* rule [that] provide guidance in understanding the rule and properly defining its intended ambit."  *Morgan*, 2001 UT 87, ¶ 13.  With regard to good cause, the Utah Supreme Court has explained

---

[3]Dykes also contends that the State failed to put on any evidence that the ATV was an operable motor vehicle.  The record shows, however, that the arresting officer testified at the preliminary hearing in the original case that he saw Dykes driving the ATV northbound on Redwood Road.  We therefore reject Dykes's contention that the State presented no evidence of the degree of the theft by receiving offense.  *See generally* Utah Code Ann. § 76-6-412(1)(a) (2008) (classifying theft as a second degree felony if the item stolen is worth at least $5000 or is an operable motor vehicle).

[4]In an analogous situation, the Utah Supreme Court overturned a magistrate's decision to dismiss a charge of abuse or desecration of a corpse on the basis that there was no new evidence or good cause for refiling where the State originally failed to present sufficient evidence to establish one variation of the offense but then refiled the charge under an alternate variation.  *See State v. Redd*, 2001 UT 113, ¶¶ 17, 19, 21, 37 P.3d 1160.

that a miscalculation of evidence necessary to establish probable cause must be innocent so as to dissuade the State from intentionally withholding evidence that might impair the defense or from harassing the defendant with repeated filings because of the prosecutor's failure to reasonably investigate the charges. *See id.* ¶¶ 13-14; *see also Redd*, 2001 UT 113, ¶ 17 (excluding the negligent failure to provide evidence of a clear element of the crime from the concept of good cause to prevent repeated filings by the State in violation of the defendant's due process rights). Similarly, when a prosecutor makes an innocent mistake about the state of the law, the potentially abusive practices the *Brickey* rule is intended to curb are not necessarily implicated. This is because to constitute a truly innocent mistake of law, just as with an innocent mistake of fact, the prosecutor must exercise some acceptable level of diligence and must not intend to harass the defendant or unfairly impair the defense. For this purpose then, an innocent mistake of law would be one that both is made in good faith (i.e., with a genuine belief in its validity) and has a colorable basis (i.e., is "apparently correct or justified"[5]). *See generally Morgan*, 2001 UT 87, ¶ 22 ("[D]ue process . . . is concerned with potential bad faith or misconduct of prosecutors.").

¶12    That appears to be the case here. There is no indication that the State's decision to pursue a second degree felony charge on the basis that an ATV qualifies as an operable motor vehicle was made in bad faith or without a colorable legal basis. The term "motor vehicle" is defined at least fourteen times in the Utah Code. In seven of these definitions, the term means a vehicle that is "self-propelled" and would therefore reasonably include an ATV. *See* Utah Code Ann. § 41-3-102(19)(a) (2010); *id.* § 41-6a-102(34)(a); *id.* § 41-6a-501(1)(j)(i); *id.* § 41-22-2(11) (Supp. 2011); Utah Code Ann. § 53-1-102(1)(e) (2010); Utah Code Ann. § 63A-9-101(7) (2011); Utah Code Ann. § 76-5-207(1)(b) (Supp. 2011). In fact, at least three of these sections expressly include "an off-highway vehicle" in the definition of motor vehicle. *See* Utah Code Ann. § 41-3-102(19)(a) (2010); *id.* § 41-6a-501(j); *id.* § 41-22-2(11)(b) (Supp. 2011). The other seven sections, including one in the same chapter of the criminal code as theft by receiving, would not include an ATV within the definition of motor vehicle. *See, e.g.,* Utah Code Ann. § 13-14-102(14)(b) (Supp. 2011) (excluding certain off-highway vehicles from the definition of motor vehicle); Utah Code Ann. § 76-6-410.5 (2008) (defining "motor vehicle" for purposes of

---

[5]New Oxford American Dictionary (3d ed.), *OxfordDictionaries.com*, *available at* http://oxforddictionaries.com/definition/american_english/colorable?region=us (last visited July 9, 2012).

the theft of a rental vehicle statute as "a self-propelled vehicle that is intended primarily for use and operation on the highways"). It is not immediately apparent, however, that the definitions used in these latter sections more appropriately fit the context of theft by receiving than the others that would include an ATV within the scope of the term. The uncertainty about which definition applies for purposes of theft by receiving is illustrated by the differing interpretations of the term by the magistrate and the district court judge in this case. The magistrate accepted that the definition of an operable motor vehicle could include an ATV for purposes of a theft by receiving charge while the district court found that it could not. And the fact that the ultimate disposition of the issue rejected the State's position does not undermine our conclusion that its argument was at least colorable.[6] Further, the record supports a conclusion that the original prosecutor genuinely believed that an ATV fit within the scope of an "operable motor vehicle" under the theft by receiving statute.

¶13   Moreover, the State did not engage in any other abusive practices, as they have been identified by the courts, when it pursued a third degree felony theft by receiving charge after the second degree felony charge was quashed. *See generally Morgan*, 2001 UT 87, ¶ 16 ("When potentially abusive practices are not involved, there is no presumptive bar to refiling."). To the contrary, the State brought the third degree felony case before the same district court judge who had dismissed the second degree felony. *See generally State v. Brickey*, 714 P.2d 644, 647 (Utah 1986) (requiring prosecutors, in an effort to prevent forum shopping, to, "whenever possible, refile charges before the same magistrate who does not consider the matter de novo, but looks at the facts to determine whether the new evidence or changed circumstances are sufficient to require a re-examination"). And the original second degree charge was dismissed not because the State failed to present probable cause that Dykes had committed the crime of theft by receiving but instead because there was insufficient evidence to show that the offense was a second degree felony, i.e., that the ATV was an "operable motor vehicle." In other words, the State had shown probable cause that Dykes had received a stolen ATV with the requisite criminal mens rea but had not shown a basis for binding the crime over as more than the default class B misdemeanor applicable to stolen property worth less than $300, *see* Utah Code Ann. § 76-6-412(1)(d)

---

[6]Our decision here does not require that we decide whether an "operable motor vehicle" includes an ATV for purposes of the theft by receiving statute, and we therefore do not reach the issue.

(2008) (current version at *id.* (Supp. 2011)) (classifying receipt of stolen property valued at less than $300 as a class B misdemeanor). *See generally Morgan*, 2001 UT 87, ¶ 13 ("[O]ne important purpose underlying the *Brickey* rule is to protect defendants from intentional prosecutorial harassment arising from repeated filings of groundless claims."). It does not appear to be fundamentally unfair to allow refiling of a charge where the State has established probable cause that the defendant committed an offense for which he could be prosecuted but the charge has been dismissed due simply to the State's innocent misunderstanding of the legal requirement for the variation of the degree of the offense that it originally charged. *See generally id.* ¶ 15 ("The lodestar of *Brickey* . . . is fundamental fairness."). Thus, under the circumstances before us, we see no reason to consider an innocent miscalculation of the law different in principle from an innocent miscalculation of the evidence. We therefore conclude that the district court did not violate Dykes's due process rights when it denied his motion to quash the bindover on the basis that the State had shown good cause to refile the charges as a third degree felony.

CONCLUSION

¶14    For the foregoing reasons, we affirm the district court's decision to deny Dykes's motion to quash the bindover.


_____
Stephen L. Roth, Judge


-----


¶15    WE CONCUR:


_____
Gregory K. Orme, Judge


_____
James Z. Davis, Judge