2021 UT App 69

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF D.A.T.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

STATE OF UTAH,
Appellee,
*v.*
D.A.T.,
Appellant.

Opinion
No. 20190986-CA
Filed July 1, 2021

Seventh District Juvenile Court, Price Department
The Honorable Craig Bunnell
No. 1108119

Jack M. McIntyre, Lori J. Cave, and Richard R.
Golden, Attorneys for Appellant

Sean D. Reyes and Kris C. Leonard,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES RYAN M. HARRIS and DIANA HAGEN concurred.

ORME, Judge:

¶1      Appellant, a minor referred to throughout this opinion as DAT, challenges his delinquency adjudication on one count of forcible sexual abuse. DAT argues that the juvenile court erred in allowing the State's witnesses to rebut his alibi defense after the prosecutor failed to provide him with notice of those witnesses as required by statute. We reject his argument and affirm.

## BACKGROUND[1]

*Abuse and Investigation*

¶2      On February 28, 2019, while riding home on the school bus, 15-year-old DAT moved from his seat and sat next to a 14-year-old girl (Victim). DAT and Victim had known each other "[s]ince [they] were little." DAT soon began "just to touch [Victim's] leg." Victim told DAT to stop, but he did not. DAT then put his hands down Victim's pants and inserted his finger into Victim's vagina three times. Victim told him no on each occasion and "kept pushing his hands away."

¶3      When Victim arrived home, she "went right to her bedroom." Victim's mother (Mother) followed and asked what was wrong, to which Victim responded "that she wanted to commit suicide." Victim then told a friend (Friend 1) of the abuse via text. Friend 1 urged her to tell school officials, but Victim did not do so right away, explaining "there [was no] proof that he did it [and it] would be my word vs his word." The date of the text-message exchange indicated that the text exchange occurred on February 28. Victim and Friend 1 then had a group call with another friend (Friend 2), during which Victim told both of them about the abuse DAT perpetrated against her. A screenshot taken from Victim's phone showed that this call also occurred on February 28.

¶4      Five days later, Victim informed school officials of the abuse, and a police officer (Officer) was assigned to investigate. Officer interviewed Victim, Mother, Friend 1, Friend 2, DAT, DAT's mother, and two other students who were on the bus the day of the abuse.

---

1. "On appeal from a bench trial, we view the evidence in the light most favorable to the juvenile court's findings." *In re J.A.M.*, 2020 UT App 103, n.1, 470 P.3d 454 (quotation simplified).

¶5    Victim initially told Officer that the abuse occurred on February 27. But DAT's mother told Officer that DAT was not in school or on the bus on February 27 because he was at a dental appointment. Officer confirmed that this was the case and returned to Victim with this information, but Victim reiterated that February 27 was the date on which the abuse occurred. Friend 1 also told Officer that while the text message exchange between him and Victim occurred on February 28, the abuse happened on February 27.

¶6    Another student who was on the bus (Witness) informed Officer that she remembered seeing DAT on the bus with his hand on Victim's leg, but could not recall the date and noted that it "could have been months ago." Witness also told Officer that DAT was "usually not on the bus." The other students Officer interviewed saw no inappropriate touching of Victim by DAT.

¶7    During his interview with Officer, DAT "admitted putting his hand on [Victim's] leg" while riding the bus but denied doing anything else. Officer "never told him what date, . . . just . . . what the accusations were." DAT appeared "astonished" at the accusations, but he did not deny touching Victim's leg.

¶8    A few weeks later, Mother called Officer and informed him that the text and call information on Victim's phone indicated that the texting and group call with Friend 1 and Friend 2 occurred on February 28 and, as memorialized by Officer in his report, that "this would confirm the incident on the bus between [DAT] and [Victim] occurred on 2-28-19 not 2-27-19." Officer again met with Victim, who showed Officer screenshots from her phone verifying that date. Officer scanned the messages to see whether the date of the incident was mentioned in the texts themselves, but it was not. There were security cameras at the school, but Officer did not view or obtain any of the footage from the dates in question.

¶9     The State filed a delinquency petition in juvenile court alleging that "[o]n or about February 27, 2019," DAT committed forcible sexual abuse of a child fourteen years of age or older, a second-degree felony if committed by an adult. After filing the petition, the prosecutor provided DAT with the police reports and interviews, which included all the information discussed above. Sometime after receiving this information, DAT filed a Notice of Intention to Claim Alibi, pursuant to Utah Code section 77-14-2 (the alibi statute).[2] In this notice, DAT informed both the prosecutor and the court that he intended to claim he was not in school or on the bus on February 27 because he was at the dentist's office, and that he was not on the bus on February 28 and intended to present an alibi witness (Alibi Witness) who would testify that he drove DAT home from school that day. The prosecutor did not respond to the notice.

*Delinquency Hearing*

¶10    Officer was the first to testify at the delinquency hearing. Before Officer could begin testifying about his investigation, however, DAT's counsel objected:

---

2. The alibi statute directs that after a defendant has submitted his notice of an alibi defense, "[t]he prosecuting attorney, not more than five days after receipt of the [alibi witness] list provided [by the defense], shall file and serve the defendant with the addresses, as particularly as are known to him, of the witnesses the state proposes to offer to contradict or impeach the defendant's alibi evidence." Utah Code Ann. § 77-14-2(1) (LexisNexis 2017). It also states that "[i]f a defendant or prosecuting attorney fails to comply with the requirements of this section, the court may exclude evidence offered to establish or rebut [the] alibi" but "[t]he court may, for good cause shown, waive the requirements of this section." *Id.* § 77-14-2(3), (4).

> Under [the alibi statute], we did file a notice of alibi defense in this case a long time ago. We didn't receive a response to that, so with respect to February 27th or February 28th, I'm going to object to any evidence being produced to refute that alibi on those dates. The Court can only waive that right for good cause being shown.

¶11 The prosecutor replied that while he did not file a response to the alibi notice, the police reports that "had gone to them initially indicat[ed] the dates that were involved and . . . the issue regarding the dates, [and he] was functioning under the assumption that that took care of [it]." He further stated that "initially, it was reported . . . that they were talking about the 27th of February [but a] subsequent investigation and a supplemental report indicate and clarify that the date was actually the 28th." DAT's counsel responded that "the report does say that, but the code seems to contemplate they're going to identify specific witnesses that are going to refute my alibi defense" and "the police report is not the same thing as a separate written response to a notice of alibi defense." The juvenile court noted that while the alibi statute contemplated that the State would provide a separate written document in response to an alibi notice, "the substance of the statute . . . would establish a basis for good cause . . . in that the substance is the information that would be provided by [the police] report." The court then ruled that "good cause has been shown in that the defense has had the name of the witness, [and] has had the dates that the prosecution would be presenting evidence on." Accordingly, the court "waive[d] the requirement of [the alibi statute]." Officer then proceeded to testify regarding his investigation, along the lines recounted above.

¶12 Victim then testified that the text exchange with Friend 1 and the group call with Friend 1 and Friend 2, both of which were time-stamped on her phone as February 28, occurred on

the same day as the incident with DAT. Victim testified that she "rewrote a police statement," correcting the date of the incident from the 27th to the 28th because she had initially "got [her] dates mixed up" and subsequently "found evidence that it happened the 28th."

¶13    Witness testified next and recounted that DAT and Victim were on the bus on February 28. This testimony differed from her statement to Officer in which she stated that it "could have been months ago." DAT did not object to Witness's testimony at this point. On cross-examination, Witness acknowledged that she could now recall the date only because the prosecutor had informed her of the correct date. At the beginning of the prosecutor's redirect examination of Witness, DAT's counsel interrupted the prosecutor's questioning and requested a sidebar conference. Unfortunately, the majority of this conversation in the record is characterized as unintelligible. The entirety of the conversation, as it appears in the transcript of the delinquency hearing, is as follows:

> [DAT's Counsel]: Well, let me . . . tell you what my concern is and then Your Honor can decide whether or not we want off.
>
> (Side bar conversation was held.)
>
> [Counsel]: But (unintelligible).
>
> The Court: Well, she's already testified now.
>
> [Counsel]: (Unintelligible.)
>
> The Court: [Prosecutor], your response?
>
> [Counsel]: (Unintelligible.)
>
> [Prosecutor]: I don't (unintelligible).

> The Court: And that information was provided . . . to Counsel?
>
> [Counsel]: (Unintelligible) this morning.
>
> [Prosecutor]: (Unintelligible.)
>
> [Counsel]: (Unintelligible.)
>
> The Court: Well . . . from my view, you have not been ambushed. You . . . already did your cross-examination, you asked for an exhibit to be admitted and it was admitted, and so . . . I'm going to overrule the objection.

Mother, Friend 1, and Friend 2 also testified consistent with their accounts as summarized above. The State also called one of the two other students on the bus whom Officer had interviewed. This student testified that she did not remember specific dates that DAT was on the bus but that she had seen DAT on the bus before, although he rode the bus infrequently.

¶14 As part of his defense, DAT called the school bus driver to testify. She said that she had no recollection of the dates in question. She stated that she does not allow students to change seats on the bus but acknowledged that when "driving down the highway at 65, I don't see everything." DAT also called Alibi Witness, who testified that he "picked [DAT] up from school and took him home" on February 28. Alibi Witness also testified that he occasionally rode the bus and if students tried to change seats, the bus driver "would stop the bus and you'd get yelled at." Alibi Witness also claimed that if DAT had gotten on the bus that day, security cameras at the school would have captured DAT leaving the school and getting on the bus.

¶15 Finally, DAT testified in his own defense. He asserted that he did not "take the bus home from school on February 28th,"

asserting instead that Alibi Witness drove him home. DAT claimed that while he "told Officer . . . that [he] touched [Victim] on her leg," he thought they were discussing a date "[a]round the beginning of August . . . 2018."

¶16    After the evidence was presented, the juvenile court adjudicated DAT delinquent beyond a reasonable doubt. It stated that when it came to dates, each teen who testified was somewhat imprecise. The court explained that the screen shots of Victim's phone showing that the group call and text occurred on February 28, in conjunction with Victim's credible testimony that she sent the text and engaged in the group call on the same day as the abuse, "verif[ied] the date of the alleged offense." The court also found that while Witness's "police statement was mushy at best" regarding the date on which the abuse occurred, "her testimony on the stand was very emphatic" and "was very credible." The court further found the bus driver's testimony "that she doesn't always see what goes on in the back of the bus" to be "very credible." Regarding Alibi Witness, the court gave his testimony little weight because the court found him not credible. Finally, the court found that Victim's "testimony was far more credible and reliable than [DAT's] testimony" because "she never changed her story other than the date part" and that while DAT made "a big deal out of that, . . . the date part is not as crucial, and the statute itself does not require that." DAT appeals.

ISSUE AND STANDARD OF REVIEW

¶17    DAT raises one issue on appeal that merits our plenary consideration.[3] He asserts that the juvenile court erred in ruling

3. DAT also contends that the juvenile court violated his due process rights "when it failed to consider potentially exculpatory evidence" in the form of "lost" recordings from the school

(continued…)

(…continued)

security cameras "that would have disclosed [his] whereabouts at the times in question." This issue was not preserved. DAT asserts that it was preserved simply because "several witnesses . . . testified that there were video cameras at the school that would have disclosed [his] whereabouts" and because the court "considered [Alibi Witness's] testimony about the camera's potential as harming [his] credibility." Specifically, the court ruled that Alibi Witness's "credibility went out the window" when he began testifying as to what the school's security cameras could see because he could not know that information.

For an issue to be preserved for appellate review, "(1) the issue must be raised in a timely fashion; (2) the issue must be specifically raised; and (3) a party must introduce supporting evidence or relevant legal authority." *Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 14, 48 P.3d 968 (quotation simplified). None of this occurred below. DAT never asserted that his due process rights were violated and that he was thus entitled to a remedy as a result of any allegedly lost video evidence, thereby failing to specifically raise the issue or introduce relevant legal authority for the juvenile court to consider. *See State v. Lopez*, 2020 UT 61, ¶ 28 n.13, 474 P.3d 949 ("[V]ague allusions to due process are not enough to preserve [a] due process claim[.]"). Essentially, DAT contends that if a lower court simply considers evidence, any issues that could arise from that evidence are preserved for appellate review regardless of whether the lower court considered the specific issue. If we were to accept this expansive view of our preservation requirement, we would eviscerate the rule.

Moreover, DAT has not asked us to review this unpreserved issue under any of the established exceptions to the preservation rule. *See State v. Reid*, 2018 UT App 146, ¶ 40, 427 P.3d 1261 ("When a defendant fails to raise the issue before the district

(continued…)

that "there was good cause to allow the prosecution to elicit testimony rebutting [his] alibi defense." When a statute grants a court "discretion to depart from a general rule based on a showing of good cause," we review the court's decision for an abuse of discretion. *Honie v. State*, 2014 UT 19, ¶ 29, 342 P.3d 182.

## ANALYSIS

### I. Preservation

¶18    On appeal, DAT asserts that the juvenile court's errors regarding the alibi statute are twofold. First, he asserts that the court erred in overruling his objection at the beginning of his delinquency hearing, before Officer testified, based on the prosecutor's failure to comply with the alibi statute. Second, DAT asserts that the court erred in dismissing his alibi-statute objection made while Witness was on the stand. It is clear from the record that the first issue was raised in a timely and specific manner, and it was thus preserved for our review. *See O'Dea v. Olea*, 2009 UT 46, ¶ 18, 217 P.3d 704 ("To properly preserve an issue at the [trial] court, the following must take place: (1) the

_____

(…continued)
court, the law of preservation controls and we review the issues under established exceptions to the law of preservation, namely, plain error, exceptional circumstances, or ineffective assistance of counsel, if the appellant argues that one of these exceptions apply.") (quotation simplified). In focusing on preservation, we do not mean to suggest that DAT's due process claim is a meritorious one. It is far from clear that he would have been successful on such a challenge. *See generally State v. Powell*, 2020 UT App 63, ¶¶ 51–55, 463 P.3d 705 (holding that the State had no obligation to prevent the destruction of potentially exculpatory evidence that the State never possessed and that was under the control of a third party).

issue must be raised in a timely fashion; (2) the issue must be specifically raised; and (3) a party must introduce supporting evidence or relevant legal authority.") (quotation simplified). DAT's second issue, however, was not preserved.

¶19    DAT's second objection was lodged after DAT had cross-examined Witness and immediately before the State conducted its redirect examination. On appeal, DAT claims that he objected to Witness's "contaminated testimony" that contradicted his alibi defense, in reliance on the alibi statute. It is true that DAT objected at this point to Witness's testimony, but based on the record before us, we cannot ascertain the grounds for the objection. Once DAT objected, the attorneys held a sidebar conference with the juvenile court, the record of which is limited to a disjointed, mostly inaudible conversation, which we recounted in paragraph 13.[4] The sidebar ended with the court

---

4. Under the Utah Constitution and the Utah Code, "[t]he juvenile court is a court of record." Utah Code Ann. § 78A-6-102(2) (LexisNexis 2018). *See* Utah Const. art. VIII, § 1 ("The Supreme Court, the district court, and such other courts designated by statute shall be courts of record."). Thus, a reliable record needs to be made of all its proceedings, and merely going through the motions of setting up recording equipment is insufficient. Courts must make certain that all their proceedings are properly and reliably recorded. *See State v. Suarez*, 793 P.2d 934, 936 n.3 (Utah Ct. App. 1990) ("A record should be made of all proceedings of courts of record. That precept applies to conferences in chambers and at the bench as well as more formal proceedings.") (quotation simplified). *See also Briggs v. Holcomb*, 740 P.2d 281, 283 (Utah Ct. App. 1987) ("Although consistently making a record of all proceedings imposes a greater burden on the trial court . . . , it is impossible for an appellate court to review what may ultimately prove to be important proceedings when no record of them has been made."). This burden is not the

(continued…)

stating, "Well . . . from my view, you have not been ambushed . . . and so . . . I'm going to overrule the objection." Based on this ruling, DAT's objection could have been premised on several grounds. For example, DAT could have been requesting that the

---

(…continued)

court's alone. The parties "share[] responsibility to insure that an adequate record is made." *Birch v. Birch*, 771 P.2d 1114, 1116 (Utah Ct. App. 1989). And in the event an adequate record is not made, the Utah Rules of Appellate Procedure provide a remedy, allowing the parties to file a motion to correct or modify the record to cure the defect. *See* Utah R. App. P. 11(h).

That being said, the problems with the record in this case arose when counsel strayed from their table microphones to have a conversation at the bench with the juvenile court. We recognize that sidebar conferences are conducted during trials to keep legal discussion from the jury, thereby avoiding any taint of the jury's consideration of the evidence. We have noted in reviewing records in other cases the high incidence of "unintelligible" notations in the record of bench conferences, suggesting the advisability of making a better record of the discussion during the next break in the trial or of upgrading the recording equipment at the bench. Here, however, the case was tried to the court and we are hard-pressed to understand the need for the sidebar conversation that took place. After all, there was no jury whose consideration of the case could be tainted by the discussion. But in any event, the court and the parties should have taken care to ensure that the conversation was properly recorded in compliance with statute and the Utah Constitution. Given that they failed to do so, DAT should have moved under rule 11(h) of the Utah Rules of Appellate Procedure to supplement or re-create the record. *See State v. McHugh*, 2011 UT App 62, ¶ 4, 250 P.3d 1006 (per curiam) ("It is an appellant's burden to assure that the appellate record is adequate to evaluate his claims.").

juvenile court revisit his first objection on the basis of the prosecutor violating the alibi statute. Alternatively, the objection could have been an entirely new one brought under rule 16 of the Utah Rules of Criminal Procedure, which carries with it similar disclosure requirements and potential remedies, including exclusion of evidence. Or this objection might have been one premised on prosecutorial misconduct, alleging that the prosecutor "ambush[ed DAT] at trial with the withheld evidence," an action that "would prejudice [DAT's] right to a fair trial . . . in contravention of important due process rights." *See State v. Morgan*, 2001 UT 87, ¶ 14, 34 P.3d 767.

¶20 Ultimately, "it is an appellant's burden to assure that the appellate record is adequate to evaluate his claims." *State v. McHugh*, 2011 UT App 62, ¶ 4, 250 P.3d 1006. *See also* Utah R. App. P. 11(h) ("If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth."). Based on the inadequate record before us, we simply cannot ascertain the ground for the second objection, rendering DAT's arguments regarding this objection unpreserved. *See State v. Manchester*, 2004 UT App 248U, para. 3 ("The record of this objection is entirely unintelligible, and does not demonstrate that [the defendant] specifically raised the substance of his appellate challenge to a level of consciousness before the trial court. Thus, these arguments were not preserved in the court below, and we will not address them.") (quotation simplified). Therefore, we limit our analysis to DAT's first objection.

## II. Alibi Statute

¶21 DAT's preserved claim is that the juvenile court erred in ruling that "good cause" had been shown by the State for excusing its noncompliance with the alibi statute. The alibi statute directs that "[a] defendant . . . who intends to offer

evidence of an alibi shall . . . file and serve on the prosecuting attorney a notice, in writing, of his intention to claim alibi." Utah Code Ann. § 77-14-2(1) (LexisNexis 2017). This "notice shall contain specific information as to the place where the defendant claims to have been at the time of the alleged offense and . . . the names and addresses of the witnesses by whom he proposes to establish alibi." *Id.* In response, "[t]he prosecuting attorney . . . shall file and serve the defendant with the addresses . . . of the witnesses the state proposes to offer to contradict or impeach the defendant's alibi evidence." *Id.* If the defendant or prosecutor fails to comply with these requirements, "the court may exclude evidence offered to establish or rebut alibi." *Id.* § 77-14-2(3). Nonetheless, "[t]he court may, for good cause shown, waive the requirements of this section." *Id.* § 77-14-2(4).

¶22    For purposes of our analysis, we accept the State's concessions that the alibi statute applies to this case[5] and that the

---

5. Although the State concedes on appeal that the alibi statute applies here and that the prosecutor did not comply with it, in our view it is not entirely clear that the alibi statute does apply to this case. The alibi statute, by its terms, is concerned only with witnesses who are able to directly contradict or impeach a defendant's alibi evidence. *See* Utah Code Ann. § 77-14-2(1) (LexisNexis 2017). In this case, the statute would clearly apply, for example, if the State intended to call the dentist's receptionist to testify that DAT did not have an appointment at the relevant time or if the State intended to call another of DAT's schoolmates to impeach Alibi Witness's account through testimony that Alibi Witness gave the schoolmate a ride home on February 28, and not DAT. But Witness and the other witnesses called by the State at trial were part of the State's case-in-chief, and the State disclosed their identities and contact information to DAT before he filed his notice of alibi. So, while some of their testimony went to the *credibility* of Alibi Witness, Witness and the State's

(continued…)

prosecutor violated the statute in a technical sense because he did not "file and serve [DAT] with the addresses . . . of the witnesses the state propose[d] to offer to contradict or impeach the defendant's alibi evidence." *See id.* § 77-14-2(1). Even assuming such a violation, however, DAT is not automatically entitled to relief, because the alibi statute grants discretion to the lower court in determining what, if any, relief is appropriate. First, the statute does not compel the court to exclude the State's witnesses. Rather, it directs only that the court "*may* exclude evidence offered to establish or rebut alibi"—it does not state that the court "shall" exclude it. *See id.* § 77-14-2(3) (emphasis added). Additionally, the statute directs that "[t]he court may, for good cause shown, waive the requirements" of the statute altogether. *See id.* § 77-14-2(4). Ultimately, "the overriding consideration in evaluating any notice-of-alibi claim must be the avoidance of unfair surprise or prejudice to either party, not an exaltation of technical formalities." *State v. Ortiz*, 712 P.2d 218, 220 (Utah 1985).

¶23    The alibi statute requires only that the prosecutor "file and serve the defendant with the addresses . . . of the witnesses the state proposes to offer to contradict or impeach the defendant's alibi evidence." Utah Code Ann. § 77-14-2(1). The

---

(…continued)

other witnesses were not specifically called "to contradict or impeach [DAT's] alibi evidence." *See id.* A critical part of Witness's testimony was that she remembered seeing DAT put his hand on Victim's leg, which supported Victim's version of events. This testimony was not a rebuttal to DAT's alibi but rather an attempt by the State to establish that DAT committed the charged offense. Ultimately, we have our doubts about whether the alibi statute even applies in a situation like this. Despite our skepticism, because the State admits that the alibi statute applies, our analysis assumes as much.

police reports disclosed to DAT supplied him with a list of ten potential witnesses—one of which was his mother—and their contact information, including the seven witnesses the State called at trial: Victim, Witness, Officer, Mother, Friend 1, Friend 2, and one of the other students on the bus interviewed by Officer. DAT asserts that this notice was insufficient because it did not include "notice that any witnesses would be testifying about [the] events on February 28" and did not specifically identify "which witnesses would testify to attack [his] alibi," thus resulting in "unfair surprise and prejudice." DAT's argument is unavailing.

¶24    From examining both police reports as a whole, it is clear that DAT was put on notice that the prosecution was going to focus on February 28, and not February 27, as the day that the offense occurred. From the reports, DAT knew that Victim changed her recollection of the date and was now contending that the incident occurred on February 28. He also knew that Mother informed Officer that Victim's phone records would support that contention. Thus, DAT could not have been surprised or prejudiced to learn that the State was planning to produce witnesses who would testify that he was on the bus on February 28. And while it is true that the reports referred to ten potential witnesses, not all of whom ended up being relevant to DAT's alibi defense or even testifying at the hearing, DAT still had nearly eight weeks from receiving these reports to interview the potential witnesses and ascertain what their testimony would be regarding the specific date of the offense. And he knew, based on the facts detailed in the police reports, to focus on Victim, Mother, Witness, Friend 1, and Friend 2 regarding the date on which they would testify the abuse occurred. This group of witnesses was not an overly burdensome number to investigate over a period of two months. And all the witnesses except Witness testified consistently with the accounts memorialized in the police reports. Moreover, any supposed violation of the alibi statute that might have arisen from

Witness's inconsistent memory has not been preserved. *See supra* ¶¶ 18–20.

¶25 Finally, at the hearing, DAT's counsel acknowledged that the police "report does say that" February 28, not February 27, was the day on which the abuse occurred and his only true complaint was that "the code seems to contemplate they're going to identify specific witnesses that are going to refute my alibi defense" and "the police report is not the same thing as a separate written response to a notice of alibi defense." Thus, by his counsel's admission, DAT knew whom the prosecutor might call at the hearing and that the prosecutor's focus had shifted from placing DAT on the bus on February 27 to placing him there on February 28. From the standpoint of DAT's alibi defense, this would only shift his focus from being at the dentist instead of being on the bus, to being driven home by Alibi Witness instead of being on the bus.

¶26 Based on these facts, even though DAT was not provided a separate list of witnesses in response to his notice of alibi, the police reports, when viewed as a whole, provided the "addresses . . . of the witnesses the state propose[d] to offer to contradict or impeach [DAT's] alibi evidence." *See* Utah Code Ann. § 77-14-2(1). Therefore, the juvenile court's ruling on DAT's preserved challenge comported with "[t]he overriding consideration" with notice-of-alibi claims: "the avoidance of unfair surprise or prejudice to either party, not an exaltation of technical formalities." *See State v. Ortiz*, 712 P.2d 218, 220 (Utah 1985). Thus, the court did not abuse its discretion in finding that there was "good cause [to] waive the requirements of [the alibi statute]."[6] *See* Utah Code Ann. § 77-14-2(4).

---

6. DAT asserts that "not having read the reports, and with no proffer of their content, the trial court had no factual basis for

(continued…)

CONCLUSION

¶27   The juvenile court did not abuse its discretion in electing not to exclude the State's witnesses in accordance with the requirements of the alibi statute. DAT received all the information required through previous discovery disclosures.

¶28   Affirmed.

————————

(…continued)
overruling [his] objection." At the hearing, the prosecutor explained that the police reports "initially . . . reported . . . that they were talking about the 27th of February [but a] subsequent investigation and a supplemental report indicate and clarify that the date was actually the 28th," and DAT's counsel acknowledged that "the report does say that." Thus, if there was any error on the court's part for not reading the reports, DAT invited that error by agreeing with the prosecutor's summary of the report's key content, obviating any need for the court to read the reports. *Cf. State v. McNeil*, 2016 UT 3, ¶ 17, 365 P.3d 699 ("Under the doctrine of invited error, an error is invited when counsel encourages the trial court to make an erroneous ruling. The rule discourages parties from intentionally misleading the trial court so as to preserve a hidden ground for reversal on appeal[.]") (quotation simplified).